PEOPLE v. NAIMARK.

(Supreme Court, Appellate Division, Second Department. January 17, 1913.)

CRIMINAL CONVICTION—REVERSAL.

Conviction of perjury, alleged to have been committed in the trial of a civil action, and sentence for a term of not less than five nor more than ten years, reversed, and justice *held* to require a new trial.

Burr, J., dissenting.

Appeal from Kings County Court.

Max Naimark was convicted of perjury, and sentenced for a term of not less than five nor more than ten years, and he appeals. Reversed, and new trial ordered.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

Abraham Gruber, of New York City, for appellant.

Hersey Egginton, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, on the brief), for the People.

WOODWARD, J. The appellant is charged with the crime of perjury, alleged to have been committed in the trial of a civil action. The defendant employed one Goldenberg in his factory in making sweaters. On the termination of this employment, the defendant had some controversy with Goldenberg as to the amount of salary due to the latter. The defendant claimed the amount to be $86.30, and Goldenberg claimed $147.35 in addition thereto. The defendant gave Goldenberg his check for $86.30, and it is claimed by Goldenberg that at the time it was agreed the matter of $147.35 should be submitted to friends for arbitration, and that the check did not purport to be payment in full of the account. Upon the trial of the action brought by Goldenberg to recover the balance of the claim, the defendant swore that at the time of the delivery of the check it had written across the face thereof the words, "Paid in full," and the check was produced in evidence, showing these words upon its face. Goldenberg testified that he took the check to his attorney before using it, and that he subsequently had a photograph taken of the same, and that the words, "Paid in full," were not upon it when he received it from the defendant. The photograph was received in evidence, and Goldenberg's attorney testified that the check did not have these

words upon it when it was presented to him. With the evidence in this shape, the justice presiding in the Municipal Court impounded the papers and delivered the same to the district attorney, and an indictment was found against the defendant, charging him with perjury.

Upon the trial of the defendant upon this indictment the record upon its face shows no prejudicial error to the defendant up to the time of pronouncing sentence. He appears to have been duly convicted of the crime, and while there was evidence in the record which might have induced reasonable men to think the defendant had been the victim of a plan to catch him in a crime, for men do not usually procure the photographing of a check in anticipation that it may be altered thereafter, yet the evidence is sufficient to warrant the conviction, and, were we satisfied that justice did not require a new trial, we should feel called upon to affirm the judgment.

At the close of the trial, counsel asked for delay in passing sentence, and in the course of a colloquy between the court and counsel the court said:

"This case has been before me for three weeks, from the very moment of his arrest. He was arraigned before me. * * * He knew just what to expect, if he insisted on going into the fabrication of lies and perjury introduced here. * * * I said to this man before he went to trial, through his counsel and associate counsel, that he having admitted his guilt in this case, if he persisted in going to trial and trying further to deceive this court and the jury in this case, that he would get the full limit of sentence. I said: 'If he wished to take a plea in this case, I would give him a very light sentence.' I named what this would be; but, despite that fact, he insisted on going to trial, believing he might deceive this jury and this court with the further daring perjury that was introduced in this case. He went on well knowing that, if he were convicted, he would get the full limit of sentence. That was said to him through his counsel. I told his counsel: 'Now, you are taking a chance. I am satisfied he will be convicted. He admits he is guilty and the records say so. I don't see how he is going to avoid it.' Counsel pleaded with him. He said no; he would take his chance. He has taken his chance. I said to counsel: 'After he is convicted, please don't bring the whole town to me and ask me to give him a small sentence, because I say to you now, if he is convicted he will get the limit of sentence.' He is going to aggravate his already flagrant case of perjury. I told that to counsel. * * * Now, you want me to be held up and beset every minute of twenty-four hours a day by more people until I sentence him? No; I must sentence him this morning. * * * We are not going to let this guilty man escape."

Clearly, had the learned trial judge been proposed for a juror, he would have been disqualified by his attitude toward the prisoner, who was presumed under the law to be innocent, and while it is true that no substantial legal error appears in the trial, so far as the record discloses, it is impossible in a printed record to reproduce the atmosphere of the courtroom, or to take account of those acts on the part of a prejudiced judge which are likely to go far in the determination of questions of fact. A smile, a sneer, an exclamation, an inflection of the voice in giving a ruling, right and proper in itself, may be far more prejudicial to the rights of the defendant than the average erroneous ruling, and the idea of a judge presiding at a trial, committed in advance to the theory of the defendant's guilt, and to a determination to administer punishment up to the full limit of the law, is

destructive to that conception of justice which pictures her with blinded eyes, and is shocking to our sense of judicial fairness. In the ordinary administration of justice it is not customary to inflict the full penalty of the law for a first offense, and the statute makes some drastic provisions for those who are convicted of a felony after having been convicted of other crimes and misdemeanors (section 510, Code of Criminal Procedure), but in the case now before us the prisoner was in a sense on trial for two crimes—one the crime of perjury as a first offense, where he would naturally expect some leniency (and such as the trial judge evidently considered adequate for the offense for which he was indicted), and the other for perjury as a second offense, for the trial judge had threatened that if he stood upon his constitutional right, with the presumption of innocence, he would, upon a conviction, be treated as one who had sacrificed the right to a normal punishment. The jury did not know this. They had a right to judge of the facts as they were presented, upon the theory that the court would exercise a judicial discretion in the administering of the punishment which a first offense merited, while the court, prejudging the defendant and holding him guilty of the offense charged in the indictment, permitted the case, so far as he was concerned, to go to the jury as for a second offense, because he had forewarned him that all the evidence he might produce in his own behalf would be treated as perjury—as an effort to deceive the court and jury—and the punishment was already measured out for this second element in the offense. Had the jury understood this, had they known that their conviction would entail punishment as for a second offense (and this is the practical result of the attitude of the court), it is by no means certain that all of them would have concurred in the verdict upon which this judgment rests. "The first idea in the administration of justice," say the court in Oakley v. Aspinwall, 3 N. Y. 547, 549, "is that a judge must necessarily be free from all bias and partiality. He cannot be both judge and party, arbiter and advocate in the same cause. Mankind are so agreed in this principle that any departure from it shocks their common sense and sentiment of justice. * * * It is the design of the law to maintain the purity and impartiality of the courts, and to insure for their decisions the respect and confidence of the community. Their judgments become precedents which control the determination of subsequent cases; and it is important, in that respect, that their decisions should be free from all bias. After securing wisdom and impartiality in their judgments, it is of great importance that the courts should be free from reproach or the suspicion of unfairness." See McClaughry v. Deming, 186 U. S. 49, 67, 22 Sup. Ct. 786, 46 L. Ed. 1049, holding that the trial of an officer of volunteers by a court-martial, all the members of which were regular army officers, was illegal and could be reached by habeas corpus. It is true that the remarks quoted had special relation to the principle that a man cannot be a judge in his own case, or in which he is interested, but the principles are equally applicable to any case in which the rights of individuals are involved, and in this state we are specially authorized to grant a new trial if the court be satisfied that the verdict against the prisoner was against the weight of evidence or against law, or that justice requires a new trial, whether any excep-

tion shall have been taken or not in the court below.  Section 527, Code of Criminal Procedure.  This seems to us to be a case calling for reversal upon the last ground, for it is difficult to conceive of an impartial trial and the accomplishment of that practical justice which trial by jury is intended to promote under the circumstances disclosed by this record.  The fact that this did not result in erroneous rulings is nothing to the point.  The evil is in a judge entering upon the trial of a criminal case prejudged, and virtually disposing of the case upon the basis of an aggravation of the crime charged in the indictment, without any opportunity for the jury to know the attitude of the court, except as that might manifest itself in acts which the record would not disclose, and "the act complained of was calculated to impair the confidence of the opposite party in the impartiality of the officer, which is of itself an evil which should be carefully avoided.  Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge."  People v. Suffolk Common Pleas, 18 Wend. 550, 552.

The judgment appealed from should be reversed, and a new trial ordered.

HIRSCHBERG, J., concurs.   RICH, J., concurs in result.   BURR, J., reads for affirmance.   JENKS, P. J., not voting.

BURR, J.   I dissent from the decision about to be made.   The prevailing opinion admits that the record "shows no prejudicial error to the defendant up to the time of pronouncing sentence."   To my mind the evidence overwhelmingly establishes defendant's guilt of the heinous and all too common crime of perjury.   But it is said that "justice requires a new trial" within the meaning of section 527 of the Code of Criminal Procedure.   The sole reason assigned therefor has to do only with the sentence imposed by the trial court.   It appeared that before trial defendant admitted his guilt in the presence of the judge before whom he was subsequently tried, and that he was then warned that if after such admission he persisted in standing trial, and was convicted, a heavier sentence would be imposed than if he put his admission into the form of a plea of guilty.   Mr. Justice Woodward says:

"Clearly, had the learned trial judge been proposed for a juror, he would have been disqualified by his attitude toward the prisoner."

I am not sure that this is the case, for reasons which I shall subsequently state.   Whether this is so or not, the same rule would not necessarily apply to a judge.   The record establishes that the learned trial judge carefully concealed his knowledge of defendant's guilt from the jury during the progress of the trial, and there is not the slightest ground for believing that their verdict upon the facts was in any way influenced by the knowledge which the judge possessed.   There is not a suggestion, either in the record or even in the appellant's brief, that by "a smile, a sneer, an exclamation, an inflection of the voice in giving a ruling, right and proper in itself," any rights of defendant were prejudiced.   But it is suggested that the jury did

not know that defendant had admitted his guilt to the trial judge. Is it contended that it was his duty to disclose this fact to the jury during the progress of the trial? If he had, defendant would come before us with a far more substantial ground for the reversal of this judgment than any here presented. The admission of guilt made by defendant to the trial judge before the trial required him either to disclose this fact to the jury, which would have been clearly wrong, or to keep his knowledge carefully concealed from the jury that they may not be influenced thereby, and give defendant an absolutely fair and impartial trial. The learned trial judge properly pursued the latter course. Must a trial judge, under the circumstances here disclosed, decline to preside at the trial? If that is so, then it is quite possible for every guilty defendant to disqualify every trial judge in the state by conveying to him before trial an admission of his guilt in some form other than a plea of guilty in open court.

But even in the case of a juror under the circumstances here disclosed such juror would not be necessarily disqualified. If a defendant knows that a juror has knowledge as to the fact of his guilt or innocence before the commencement of the trial, knows the extent of such knowledge and the opinion in the juror's mind resulting therefrom, and yet consents to accept him as a trier of fact in his case, he cannot afterward be heard to complain upon this ground of the verdict rendered. With full knowledge of the information possessed by the trial judge, and with knowledge of the effect which such knowledge had produced upon his mind, he did not ask to be tried before any other judge. He should not, after conviction, be permitted to play fast and loose with a court in this manner.

It is perfectly apparent from the prevailing opinion in this case that if the sentence had been less severe, or even if it had been of equal severity if unaccompanied by any remarks of the trial judge in connection with the imposition thereof, this judgment would have been unhesitatingly affirmed. Conceding for the sake of the argument that the remarks of the county judge when he imposed sentence were unjudicial in character, and that in determining the extent of the sentence he may have been influenced by passion or a vindictive spirit, that is not a legal error which we can review. The remedy is by appeal to the executive to commute the sentence.

If we are to consider the motives of a trial judge in determining the question of punishment that within the terms of the law may be inflicted, and interfere when we think that he has been too severe, we are assuming a new power of review which has not been supposed to exist. To conceal this under a general statement that "justice requires a new trial," without pointing out wherein the justice of the determination of defendant's guilt has been wronged, is to do indirectly what we may not do directly.