## NATIONAL LABOR RELATIONS BOARD v. PHELPS et al.

### No. 10599.

Circuit Court of Appeals, Fifth Circuit.

June 22, 1943.

Robert B. Watts, Gen. Counsel, National Labor Relations Board, Ernest A. Gross, Associate Gen. Counsel, National Labor Relations Board, and Richard A. Perkins, Atty., National Labor Relations Board, all of Washington, D. C., for petitioner.

William H. Bronson, of Shreveport, La., for respondents.

Before HUTCHESON and WALLER, Circuit Judges, and COX, District Judge.

HUTCHESON, Circuit Judge.

The orders sought to be here enforced were entered in a proceeding which began with Henry K. Phelps, Jr., Trustee in Bankruptcy of Atlas Pipeline Corporation, as the sole respondent. They were later reopened, and Atlas Oil & Refining Corporation was added as a respondent. Both respondents oppose the petition to enforce on the ground that the trial out of which the orders sought to be enforced grew was not a fair trial, resulting in a just adjudication, and, therefore, according them the due process to which they were entitled, but a trial by a biased and partisan examiner who starting out with a fell and partisan purpose to convict, arrived at a predetermined and, therefore, biased and partial result. Insisting that for this rea-

son the findings and orders may not stand, respondents pray that the petition to enforce the orders be denied and that the matter be sent back to the Board for a fair and impartial trial.

■ The Board does not, indeed, it could not, contest the correctness of the principle respondents invoke, for a fair trial by an unbiased and non-partisan trier of the facts is of the essence of the adjudicatory process as well when the judging is done in an administrative proceeding by an administrative functionary as when it is done in a court by a judge. Indeed, if there is any difference, the rigidity of the requirement that the trier be impartial and unconcerned in the result applies more strictly to an administrative adjudication where many of the safeguards which have been thrown around court proceedings have, in the interest of expedition and a supposed administrative efficiency been relaxed.[1] Nor will the fact that an examination of the record shows that there was evidence which would support the judgment, at all save a trial from the charge of unfairness, for when the fault of

[1] As the Supreme Court put the matter in Ohio Bell Telephone Co. v. Public Utilities Comm., 301 U.S. 292, at page 304, 57 S.Ct. 724, at page 730, 81 L.Ed. 1093:

"Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. West Ohio Gas Co. v. Public Utilities Comm'n, (No. 1), supra, 294 U.S. 63, at page 70, 55 S.Ct. 316, 79 L.Ed. 761; West Ohio Gas Co. v. Public Utilities Comm'n (No. 2), 294 U.S. 79, 55 S.Ct. 324, 79 L.Ed. 773; Los Angeles Gas & Electric Corp. v. Railroad Commission, 289 U.S. 287, 304, 53 S.Ct. 637, 77 L.Ed. 1180. Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the 'inexorable safeguard' (St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 73, 56 S.Ct. 720, 80 L.Ed. 1033) of a fair and open hearing be maintained in its integrity. Morgan v. United States, 298 U.S. 468, 480, 481, 56 S.Ct. 906, 80 L.Ed. 1288; Interstate Commerce Comm. v. Louisville & N. R. Co., [227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431] supra. The right to such a hearing is one of 'the rudiments of fair play' (Chicago, M. & St. P. Ry. Co. v. Polt, 232 U.S. 165, 168, 34 S.Ct. 301, 58 L.Ed. 554) assured to every litigant by the Fourteenth Amendment as a minimal requirement. West Ohio Gas Co. v. Public Utilities Comm'n (No. 1), (No. 2), supra; Brinkerhoff-Faris [Trust & Savings] Co. v. Hill, 281 U.S. 673, 682, 50 S.Ct. 451, 74 L.Ed. 1107. Cf. Norwegian Nitrogen Co. v. United States, [288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796] supra. There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored." Cf. Morgan v. United States, 304 U.S. 1, 58 S.Ct. 999, 82 L.Ed. 1129.

In N. L. R. B. v. Ford Motor Co., 6 Cir., 114 F.2d 905, 909, the rule was stated thus:

"We may accept as fundamental, the axiom that a trial by a biased judge is not in conformity with due process of law."

Inland Steel Co. v. N. L. R. B., 9 Cir., 109 F.2d 9, 20, thus states the rule:

"That a trial by a biased judge is not in conformity with due process is sustained by the authorities. In Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L. Ed. 749, 50 A.L.R. 1243, the court said: '* * * No matter what the evidence was against him, he had the right to have an impartial judge.' * * * The principle is aptly stated in People v. Naimark, 154 App.Div. 760, 139 N.Y.S. 418, where it is said: '* * * The first idea in the administration of justice * * * is that a judge must necessarily be free from all bias and partiality. He cannot be both judge and party, arbiter and advocate in the same cause. Mankind are so agreed in this principle that any departure from it shocks their common sense and sentiment of justice'. And the fact that the court's judgment may be justified on the merits does not obviate the requirement of a fair trial. As was said in Union Pacific R. Co. v. Syas, [8 Cir.] 246 F. 561: '* * * But no judgment is just, if not obtained by due process of law; otherwise, courts could enter judgments without trial.' * * * The Act authorizes the Board to enter an order upon a complaint alleging unfair labor practices only after a 'hearing.' This must mean a trial by a tribunal free from bias and prejudice and imbued with the desire to accord to the parties equal consideration. There is perhaps no more important right to which litigants are entitled than that they be given such a trial."

bias and prejudice in a judge first rears its ugly head, its effect remains throughout the whole proceeding. Once partiality appears, and particularly when, though challenged, it is unrelieved against, it taints and vitiates all of the proceedings, and no judgment based upon them may stand.

It remains only to inquire whether the record sustains the charge of partiality and prejudice on the part of the trial examiner, a functionary having substantially the same relation to the board that a special master has to a court of equity. Respondents say that it does, the board denies this. This is the charge. Appointed as examiner to conduct the hearing on a complaint following a charge against Phelps, as Trustee of Atlas Pipe Line Corporation, the examiner forsook his role as an impartial hearer and trier of facts, and taking on the double role of investigating accuser and espousing prosecutor, a role which the Board has not conferred, indeed, could not confer upon him as examiner, went into vigorous action as prosecution manager, and in that role did, or caused to be done, these things. Upon the false pretense that he wished to complete the record made in the cause against Phelps, Trustee, he secured a stipulation for use in prosecuting Atlas Oil and Refining Corporation. Immediately upon its receipt, he directed that the stipulation be received and entered as an exhibit in the pending cause, and brought the matter to the attention of the Board and the chief trial examiner. He caused the chief trial examiner to order the hearing reopened for the purpose of making Atlas Oil & Refining Corporation a respondent in the proceeding and to continue Denham as trial examiner. Though no charge had been made against Atlas and the filing of a charge must precede a complaint, Denham of his own motion issued an order to show cause why Atlas should not be made a party, and the complaint amended so as to charge it with offenses under the act. The proceedings having gone forward over the objections of the trustee[2] and Atlas,[3] and their motions to disqualify him, the examiner exhibited resentment and spleen toward them and gave expression to his pre-determined opinion of their guilt on the charges he was supposed to be trying.

This is the record: Appointed as examiner to conduct the hearing on a complaint following a charge brought against Phelps as Trustee of Atlas Pipe Line Corporation, the examiner conducted the hearing to its conclusion and formally closed it. Having done so, he wrote to the counsel for Phelps, Trustee, the letter set out in the margin.[4] Pursuant to this request,

---

[2] The trustee charging that he had in effect been tricked into making the stipulation and that it was being falsely made use of not to complete the record against him but to begin a new proceeding against Atlas, moved to withdraw it, moved to disqualify the examiner for prejudice, and these motions denied and the examiner exhibiting resentment and ill feeling against him, withdrew from the proceeding.

[3] Atlas appeared specially to contest the right of the examiner to institute the proceeding against it, joined in the trustee's motion to disqualify him for bias and prejudice, and these motions denied, declined to enter a general appearance or to take any further part in the proceedings.

[4] "William H. Bronson, Esquire,
    901 Commercial Bank Bldg.,
      Shreveport, Louisiana.
Re: Henry K. Phelps, Trustee, etc.
      Case No. XV-C0667.
Dear Mr. Bronson:

I have received your brief and am now in the process of preparing my Intermediate Report.

You will recall that in the informal off the record discussions you, Mr. Barker and I had, the status of the new corporation was dwelt upon but, because no transfer of assets had been effected under the Plan, the subject had no place in the record. I understand, however, that the transfer has now been accomplished and that the refinery is again in regular operation. Do you think that, since the plan of reorganization occupies such an important place, it would be a good idea to complete the record by working out with Mr. Barker and the Union representatives who appeared, a stipulation of fact covering this final phase of the matter?

If such a stipulation should be entered into, it should cover two main factors: (1) The fact that the trustee did, on a day certain, transfer the assets, in the amount and manner provided for in the Plan, to a certain corporation for a certain consideration, all in conformity with the provisions of the Plan and that the new corporation has taken possession of and is now operating the refinery; (2) That there have or have not been, changes in the management and supervisory personnel. If there have been changes, they should be noted and described. This should apply to all supervis-

a stipulation [5] was signed by Bronson, as attorney for the trustee, by Brister for the Union, and by Barker, as attorney for the Board. Upon receipt of this stipulation, solicited and obtained for the purpose of completing the record and closing the cause, the examiner, departing from his role of an impartial hearer of charges to become an instigator of them, made it the basis of reopening the hearing and converting it into a Board proceeding against Atlas, and on his own motion and notwithstanding that no charges had been filed against Atlas, and that without such charges, no basis did or could exist for a complaint against it, entered a show cause order why the complaint against the trustee should not be amended to make one against Atlas.

An amended charge having been procured to be filed, followed by an amended complaint in the cause charging Atlas with breaches of the act, the trustee moved to withdraw the stipulation because it was being falsely made use of contrary to the purpose for which it was given, and against its express provision that Atlas Oil & Refining Corporation would not be bound by it, for the partisan purpose of instituting a prosecution against Atlas. This motion denied, the trustee moved to recuse the examiner for bias and prejudice. Atlas, appearing specially, moved to dismiss the proceeding for want of jurisdiction over it, and joined in the motion of the trustee to disqualify the examiner for bias and prejudice. All of these motions were denied,[6] and the respondent, Atlas Oil & Refining Corporation, refusing to appear further, withdrew altogether from the proceeding. Thereafter the matter coming on for hearing the Board's counsel made it known that subpoenas duces tecum directed to Atlas and ad testificandum directed to certain of its officers and employees, Connally, Chance, Clanton and Roy, and sent by registered mail had not been responded to and that the witnesses were not present.[7] Later on, after a witness had testified, the examiner stated, "I

---

ory and administrative positions from the one occupied by Mr. Connally down through to the 'pusher' job that Clanton held.

If this information can be compiled and fully set out, it will complete the picture and enable both the Trial Examiner and the Board to have the entire situation in true perspective when the case is disposed of.

I am sending copies of this letter to Messrs. Barker, Massengale and Brister, and assume Mr. Barker will check with you rather promptly to determine whether such a stipulation is feasible.

[5] It provided in effect: (1) that all properties in the hands of the trustee were, on January 23, 1943, transferred to the Atlas Oil & Refining Corporation pursuant to the plan worked out for such transfer and for the cash consideration stipulated; (2) that at that time respondent trustee paid off all employees from his general manager down, the new company assumed complete control and operation of the properties unrestrained by the trustee, the new company has operated the properties continuously since that date, and there was no interruption in the continuous operation of the refinery at the time of the transfer; and (3) that the purchasing group was constituted and the new officers were as shown in the stipulation, that Connally, the General Manager, and Chance, the Refinery Superintendent, under the trustee, had become respectively Executive Vice-President and Refinery Superintendent of the new company, and that substantially all of the supervisory administrative and operating personnel were retained by the new company in their respective capacities. It concluded, "The Atlas Oil & Refining Corporation was not a party to the labor board proceeding and is not a party to this stipulation, and nothing in it shall be construed as in any way binding upon said corporation."

[6] The examiner saying as to the motion to recuse:

"Under ordinary circumstances a motion of that character would be granted almost as a matter of course. In the present instance, points raised in connection with the motion present, I think, not matters which go to the bias or the prejudice of the trial examiner or to his incapacity to make a fair and impartial disposition of the issues here, but rather to the inability of counsel for the respondent who makes the motion to reconcile himself to the principles of law as they are applied under the National Labor Relations Act and under the decision of the Board and of the courts, and as they have been enunciated by the trial examiner in connection with this matter. This is primarily a legal question in which we are involved. Under these circumstances, I am going to deny the motion."

[7] As to these subpoenas, the proceedings show that the examiner instead of

think this witness' testimony indicates that the testimony of Mr. Chance and Mr. Connally is going to be essential, and I would like to know if they will be here". Bronson, for the Trustee, stating that they were in Washington and Chicago and he didn't know whether they would get back or not, the trial examiner proceeded to assail both them and the trustee as follows:

"Of course, their refusal to be here in response to the subpoenas issued for their appearance on the 26th is utterly inexcusable, highly contumacious and contemptious, and I very frankly say if I had the power to punish them for contempt, they would be in jail—both of them. It is thoroughly reprehensible and most definitely to the obstruction of the process of this Board, and the Respondent is not entirely to be exonerated from any culpability in connection with it. He has, and always has had, a connection with those men, and I think it is one of the things that is definitely not to be excused. The Board is attempting to conduct its business in an orderly fashion; those men were served with subpoenas as individuals to come in and testify, and with the utmost of contumaciousness have refused to do so, and have interrupted and impeded the progress of the Board at this hearing and they knew they were doing it, and they knew they were going to do it. They knew what the story was and what they would be called upon to testify to, and they have used this

method to avoid it. They can't avoid it; they can merely delay it."

On April 10th, the hearing was resumed, and Bronson, the attorney for the trustee after having had read from the record the remarks the examiner had made the day before, announced that the trustee would withdraw from, and not further participate in, the hearing. Whereupon the case was closed, and the examiner filed a long and argumentative intermediate report covering eighty printed pages. In it, asserting his inerrancy because of his opportunity to see and hear the witnesses and determine their credibility, and putting forward and developing his legal theories in a manner more befitting the role of an accuser than of an impartial fact finder he found on each issue of fact and of law against respondent as to every employee but one claimed to have been discriminated against. The Board in a brief decision of six printed pages approved all the acts and conduct of the examiner, completely exonerated him of bias and prejudice, adopted each of his findings and conclusions, and put all of his recommendations into effect.

██ We cannot agree with the conclusion of the Board that respondents have had the fair trial by a disinterested and impartial trier of facts which the law accords them. Whatever ought to be said of the examiner's persistent and partisan efforts to conduct the proceedings to a decision favorable to the Board, if the ex-

adhering to his role of a hearer of the facts, took a partisan attitude as an adviser of the prosecution and advised the Board's counsel to take up with the Board the refusal of Atlas and the witnesses to respond to them. Barker, for the Board, stated that he had intended to begin his case by calling Connally, but could go ahead with other witnesses. The examiner thereupon, undertaking to advise him how to proceed, suggested that this would be putting the cart before the horse, and inquired whether he didn't want a short recess for the purpose of communicating with the Board on the question of enforcing the subpoenas. Barker replying that he did, the examiner said: "You may advise your superiors that so far as the trial examiner is concerned, he feels that the ends of justice and the proprieties of the act would not be met until they were vigorously enforced". In addition he suggested and granted adjournments so that Board's counsel could present these matters to the Board, saying, "We will recess

until 9:30 tomorrow morning in this room, and I will hear further from you with reference to the enforcement of a subpoena of the Board. If the Board elects not to enforce them, that is the Board's business over which I have no control. I do think, however that this is a very flagrant and inexcusable flouting of the Board's order as set out by its subpoena, and that it should not be ignored or condoned." Further, stating that he looked to the trustee to see that Chance and Connally were available to testify, he concluded, "If it becomes necessary for the trial examiner to issue subpoenas for these men, he will do it, and I will tell you when this trial examiner issues a subpoena, it will be obeyed, and there will be no foolishness about it." He then said to Bronson, "I am expecting the trustee to assume the responsibility of seeing that these men are present to testify as to transactions that took place while the trustee controlled the plant."

aminer had been really in the position he assumed that he was in of an agent for the Board to sustain its charges, it cannot be successfully denied that his general attitude was not impartial but partial, not disinterested but partisan. This was shown both in the securing of the stipulation for the purpose of the institution of proceedings against Atlas and in respect of his conduct with regard to the subpoenas, including his expressed resentment against both respondents, and his particularly rash and unguarded statements to the effect, that Connally and Chance knew what the facts were, and that, in order to prevent testifying to them, they had disobeyed the subpoenas. Such an attitude, excusable if not commendable in a prosecutor, is a wholly improper one in a judge or an examiner who sits in judicial place to hear and determine facts, draw conclusions of law and make reports and recommendations based thereon. The Board brushed the complaint against the examiner aside with the bare statement that it had reached the conclusion that there was neither bias nor prejudice on the part of the examiner which affected the fairness of the hearing accorded to the respondents, and it cited authorities in support of that view. They do not support it, they support a contrary view. They determine that if a litigant feels that the examiner is prejudiced, he should move his disqualification, and that, failing to so move, he should not be heard to complain after the hearing has been completed, Bethlehem Steel Co. v. N. L. R. B., 74 App.D.C. 52, 120 F.2d 641; N. L. R. B. v. Baldwin Locomotive Works, 3 Cir., 128 F.2d 39. They hold, too, that it is for the court and not for the board to determine whether in fact the hearing has been unfair, N. L. R. B. v. Acme-Evans Co., 7 Cir., 130 F.2d 477. Finally, Whitaker v. McLean, 73 App.D.C. 259, 118 F. 2d 596, cited by the Board, holds that where a judge made remarks, though in the absence of the jury, which caused the plaintiff's attorney to express the opinion that he could not very well go on because the judge's remarks evidenced bias and prejudice, the court should reverse because of the remarks. It did this in the interest of a fair trial though it stated that its impression was that the claim on which the plaintiff sued was probably without merit. Nor is the effect of the prejudice avoided here as it was held to have been in some of the cases cited in the Board's brief, N. L. R. B. v. Ford, 6 Cir., 114 F.2d 905;

N. L. R. B. v. Air Associates, 2 Cir., 121 F.2d 586, by the fact that the trial examiner made no decision and his tentative findings were disregarded by the Board. Here, unlike in those cases, the examiner made full and lengthy findings and recommendations, the Board completely adopted his findings, and put all of his recommendations into effect. More, instead of, as it usually does, making detailed findings of its own, it contented itself with the very brief statement in which it precisely adopted the findings and reasoning of the examiner and made his decision in effect its own.

The order of the Board will be vacated and set aside, and the matter will be remanded to the Board so that respondents may be accorded the fair and impartial trial guaranteed to them by law.