■ In the Matter of JAMES D. HETHERTON, Respondent, v SHIANA OGDEN, Appellant. (And Three Other Related Proceedings.) [912 NYS2d 163]—

Garry, J. Appeal from an order of the Family Court of Chemung County (Hayden, J.), entered September 2, 2009, which, among other things, granted petitioner's application, in four proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child born in 2007. The mother also has a daughter from a previous relationship. The mother and father ended their relationship in 2007 and agreed to the entry of a custody order by which the mother received physical custody and the father received visitation rights. Thereafter, the mother, her daughter and the child resided with the

mother's mother (hereinafter the grandmother). In January 2008, the father moved to Georgia to live with his parents. After a disagreement with the grandmother in January 2009, the mother left the grandmother's home and asked the father to take both children until she could find a place to live. The parties met in Virginia for this purpose. The father returned to Georgia with the children while the mother and three friends continued to travel on a trip through several southern states, including Georgia.

The father filed modification proceedings in March 2009 seeking custody of the child, and the mother then filed violation and modification proceedings, alleging that the father had refused to return the child to New York. In May 2009, Family Court awarded temporary custody to the father. After a hearing, the court granted joint legal custody to both parties with primary physical custody to the father and visitation tailored to the school calendar for the mother, who now appeals.

As the party seeking modification, the father bore the burden to show that a substantial change in circumstances warranted modification of the prior custody order in furtherance of the child's best interests (*see Matter of Rue v Carpenter*, 69 AD3d 1238, 1239 [2010]; *Matter of Siler v Wright*, 64 AD3d 926, 928 [2009]). The mother first contends that there was no change of circumstances sufficient to justify a custody modification. The record demonstrates that the mother's living situation became unstable in January 2009, at which time she effectively abdicated her role as the child's primary caregiver, at least temporarily, by leaving the child with the grandmother at first and then delivering both children to the father (*see Matter of Billets v Bush*, 63 AD3d 1203, 1204 [2009]; *Matter of Le Blanc v Morrison*, 288 AD2d 768, 771 [2001]). The mother's testimony that she did not intend the child to remain with the father for more than a few weeks was contradicted by the father's testimony—supported by a recording he made of a January 2009 telephone conversation with the mother—that she asked him to keep the child for several months. Further supporting the father's claim, the mother did not personally attempt to retrieve the child until she traveled to Georgia for that purpose in May 2009, at which time the father permitted the child to return with her to New York.* Moreover, even if the mother initially intended the child's stay with the father to last only a few weeks, there was no evidence that she took advantage of the

---

* The grandmother retrieved the daughter in March or April 2009; the parties disagree as to whether the grandmother also attempted to pick up the child at that time and whether the father refused to allow her to do so.

child's absence during that period to obtain an apartment or otherwise improve the stability of her living situation; on the contrary, although she testified that she could not afford to rent an apartment, she used a tax refund that she received at that time to finance the vacation trip.

At the time of the September 2009 hearing, the mother had acquired an apartment, but her circumstances remained relatively unstable. She testified that she was working in a part-time position providing day care for a relative and that her income was insufficient to cover her living expenses without help from the grandmother. The record was unclear as to whether the differences between the grandmother and the mother that had previously disrupted her living situation had been resolved. For these reasons, upon our review of the record, we are satisfied that the destabilization of the mother's living situation constituted a change of circumstances requiring review of the child's best interests (*see Matter of Cool v Malone*, 66 AD3d 1171, 1172-1173 [2009]; *Matter of Samuel v Samuel*, 64 AD3d 920, 921 [2009]).

The record further supports Family Court's conclusion that awarding physical custody to the father was in the child's best interests. Such a determination requires consideration of " 'the relative fitness, stability, past performance, and home environment of the parents, as well as their ability to guide and nurture the [child] and foster a relationship with the other parent' " (*Matter of Arieda v Arieda-Walek*, 74 AD3d 1432, 1433 [2010], quoting *Matter of Cukerstein v Wright*, 68 AD3d 1367, 1368 [2009]). Where, as here, the prior custody order was based on the parties' agreement, it is afforded less weight than a determination rendered after a full hearing (*see Matter of Troy SS. v Judy UU.*, 69 AD3d 1128, 1131 [2010], *lv dismissed and denied* 14 NY3d 912 [2010]; *Matter of Colwell v Parks*, 44 AD3d 1134, 1135 [2007]). Family Court found that while both parents were "relatively fit," they both displayed some immaturity and other parental shortcomings; in particular, the court noted that the mother's decision-making reflected questionable maturity, and it expressed "strong skepticism" with regard to the credibility of her account of the southern trip in which she dropped off the children with the father. The mother gave confusing and contradictory accounts of the nature and purpose of this excursion. Several witnesses testified that, during the trip, neither the child nor the mother's daughter were properly dressed, fed or cared for. There was testimony that the mother did not keep the child's immunizations and medical care up to date while he was in her custody. A case manager who had worked with the mother

for several years in a program offering support services to young parents testified that, for unspecified reasons, the mother's daughter had previously been removed from her care and put into placement, and the father testified that the mother had associated with a level two sex offender while the children were in her company. Finally, the credibility of some of the mother's testimony was questionable; she claimed that the voice in the telephone recording of her conversation with the father might not be hers, and there was evidence that she had misrepresented to the father and to Family Court personnel certain advice that she claimed was given to her by the attorney for the child.

In contrast to the mother's unstable circumstances, the father maintained a stable residence and steady full-time employment with the assistance of his parents, who were available to care for the child while the father was at work. After the child arrived in Georgia, the father obtained medical insurance coverage and pediatric care for him. Although the father's relationship with the mother had included an episode in which he hit her in a restaurant and there was evidence that he had failed to complete an anger management course mandated by the 2007 custody order, the father acknowledged the wrongfulness of his conduct and expressed remorse for it. Witnesses for both parties, including the grandmother, with whom he and the mother had lived during their relationship, described him as a good father. Notably, when the mother asked him to do so, he willingly accepted the care not only of the child but also of the mother's daughter, who was not his child, and he notified the mother of certain concerns relating to the daughter's health and behavior that he noticed during her stay with him. Accordingly, considering the totality of the circumstances and giving the appropriate deference to Family Court's credibility assessments (see Matter of Robert SS. v Ashley TT., 75 AD3d 780, 782 [2010]; Matter of Passero v Giordano, 53 AD3d 802, 803 [2008]), we find a sound and substantial basis in the record for the court's determination and discern no reason to disturb it.

Cardona, P.J., Mercure, Lahtinen and Stein, JJ., concur. Ordered that the order is affirmed, without costs.