Matter of Corey O. v Angela P. (2022 NY Slip Op 02044)





Matter of Corey O. v Angela P.


2022 NY Slip Op 02044


Decided on March 24, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 24, 2022

531849
[*1]In the Matter of Corey O., Petitioner,
v
Angela P., Appellant. (Proceeding No. 1.)
In the Matter of Corey O., Petitioner,
v
Angela P., Appellant. (Proceeding No. 2.) (And Three Other Related Proceedings.)

Calendar Date:January 6, 2022

Before:Garry, P.J., Clark, Aarons and Colangelo, JJ.; Lynch, J., vouched in.

Lisa K. Miller, McGraw, for appellant.
Peter P. Charnetsky, Vestal, attorney for the child.



Aarons, J.
Appeal from an order of the Family Court of Broome County (Connerton, J.), entered May 18, 2020, which, among other things, (1) granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, for custody of the parties' child, and (2) granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unmarried parents of a son (born in 2016) and daughter (born in 2018). Pursuant to an October 2018 order, the parents had joint legal custody of the son with the mother having primary physical custody and the father having parenting time. Although no custody order was issued with respect to the daughter, she was residing with the mother. The parties thereafter commenced various proceedings seeking, among other things, modification of the October 2018 order and an initial custody order relative to the daughter. Following a fact-finding hearing, Family Court awarded the parties joint legal custody of the children with the father having primary physical custody and the mother having parenting time. The mother appeals.
In proceeding No. 2, the father, as the party seeking modification of the October 2018 order, was required to demonstrate a change in circumstances since the entry of such order so as to trigger a best interests analysis (see Matter of Derek KK. v Jenifer KK., 196 AD3d 765, 766 [2021]; Matter of Janeen MM. v Jean-Philippe NN., 183 AD3d 1029, 1030 [2020], lv dismissed 35 NY3d 1079 [2020]).[FN1] The record reflects that the mother's living arrangement was unstable and that the second-floor loft area of her current home was only partially constructed. The record further reflects that the mother dropped the children off with the father in December 2019 and, since that time, the children have been residing with him. The mother also testified that she had not seen the children since December 2019. The record also discloses that the parties' communication has become somewhat strained. In view of the foregoing, the requisite change in circumstances existed (see Matter of Romero v Guzman, 158 AD3d 997, 999 [2018], lv denied 31 NY3d 908 [2018]; Matter of Gasparro v Edwards, 85 AD3d 1222, 1222-1223 [2011]; Matter of Hetherton v Ogden, 79 AD3d 1172, 1173-1174 [2010]).
As to the best interests of the children, although the parties have difficulty communicating, the record discloses that "their relationship is not so acrimonious that they are incapable of putting aside their differences" (Matter of Blanchard v Blanchard, 304 AD2d 1048, 1049 [2003] [internal quotation marks and citations omitted]). Indeed, as Family Court found, the parties have largely worked together to establish a means of communicating for the benefit of the children. Furthermore, the court found, and the record confirms, that the father had more stable housing than the mother, that there was room for [*2]the children and that the father had a plan to provide care for them. Although the father was not employed, he received financial support from his family and fiancÉe. Deferring to the court's findings, its decision to award the father primary physical custody of the children will not be disturbed (see Matter of Jennifer VV. v Lawrence WW., 186 AD3d 946, 949 [2020]; Matter of Gasparro v Edwards, 85 AD3d at 1224).
Finally, the mother notes that the attorney for the children (hereinafter AFC) was previously a judge who, in 2014, decided a custody case involving her. A former judge is automatically prohibited, as a matter of law, from acting as an attorney "in any action, claim, matter, motion or proceeding, which has been before him [or her] in his [or her] official character" (Judiciary Law § 17; see Matter of Czajka v Koweek, 100 AD3d 1136, 1139 [2012], lv denied 20 NY3d 857 [2013]). The pertinent inquiry is whether the instant proceedings had been before the AFC when he was a Family Court judge such that automatic disqualification of the AFC is mandated. In our view, they were not.
Various factual circumstances exist where disqualification of an attorney under Judiciary Law § 17 has been found. For instance, an attorney could not represent a petitioner with respect to that petitioner's claims against a respondent pertaining to an estate and trust where the attorney was previously the Surrogate who had presided over the probate proceedings of that same estate and issued letters testamentary and letters of trusteeship to that same respondent (Matter of Gordon, 192 AD3d 1206, 1207 [2021]). Also, a former judge who had presided over various stages of a defendant's criminal action was later disqualified from either prosecuting (see e.g. Matter of Czajka v Koweek, 100 AD3d at 1139; People v Oakley, 104 AD3d 1059, 1060 [2013]) or defending (see e.g. People v Miller, 190 AD3d 1029, 1031 [2021]; People v Sumter, 169 AD3d 1275, 1276 [2019]) that same defendant in other aspects of that same action.
Meanwhile, a former judge had presided over a defendant's prior proceedings involving a particular crime and later sought to represent that same defendant in a criminal action where the subject crime of that criminal action occurred after the judge retired from judicial office (People v Burks, 172 AD3d 1640, 1641-1642 [2019], lv denied 33 NY3d 1102 [2019]). In that circumstance, Judiciary Law § 17 did not operate to disqualify the former judge from representing the defendant in the later criminal action (id. at 1642).
Here, the custody case noted by the mother neither involved the subject children nor the subject children's father.[FN2] Rather, it was an entirely separate proceeding involving different children and a different father. Furthermore, the mother does not allege any factual ties between these underlying proceedings and the prior custody case (see id.). Indeed, the only common tie between them is that the mother was a litigant. More to the [*3]point, only the mother, and not her present custody claim over the subject children, had been before the AFC during his tenure as a judge.
Although not explicitly clear from the record, the mother's fitness as the custodial parent presumably was an issue presented in her prior custody case. It is also an issue present here. Equating a discrete issue with a "matter" provided in Judiciary Law § 17, however, impermissibly stretches the meaning of "matter" such that it does not comport with "action, claim, . . . motion or proceeding" — the other terms in Judiciary Law § 17 (see McKinney's Cons Laws of NY, Book 1, Statutes § 239 [a]). Moreover, in view of the jurisdiction of Family Court and the particular cases such court hears, a party's fitness as a custodial parent frequently arises as an issue whether directly or indirectly. By giving an expansive view to "matter," the AFC, a former Family Court judge who had presided over countless proceedings in the past, would be disqualified from representing any party in any future case where another party in such case was previously before the AFC in one of those past proceedings — a result that would occur without regard to the nature of either the past proceeding or future case.
Based on the circumstances of this case, neither a new hearing nor automatic disqualification of the AFC under Judiciary Law § 17 is required (see People v Van Alphen, 195 AD3d 1307, 1309 [2021], lv denied 37 NY3d 1061 [2021]; People v Burks, 172 AD3d at 1642; Matter of Columbia County Subpoena Duces Tecum Dated Mar. 20, 2013. [Czajka], 118 AD3d 1081, 1082 [2014]; compare People v Miller, 190 AD3d at 1031; Matter of Czajka v Koweek, 100 AD3d at 1139). Furthermore, given that the 2014 order provides the necessary and pertinent information to analyze the Judiciary Law § 17 issue, remittal to develop the AFC's prior knowledge about the mother, as the dissent suggests, is unwarranted. To the extent that the mother believed that the AFC had any certain knowledge from the prior custody case that could have prejudiced her in the underlying proceedings, she was free to, but did not, move to disqualify the AFC from his representation. Alternatively, nothing precluded the AFC from exercising his discretion to recuse himself from representing the subject children.
Garry, P.J., and Colangelo, J., concur.
Clark, J. (dissenting).
The attorney for the children (hereinafter AFC) was formerly a judge in the Family Court of Broome County and, in his judicial capacity, presided over at least one custody matter involving respondent (hereinafter the mother). We find the AFC's multiple roles when it comes to this family to be of concern, particularly in light of the ever-present need to safeguard the integrity of the Judiciary from even the appearance of impropriety (see Matter of City of Rochester, 208 NY 188, 192 [1913]; Leonard v Mulry, 93 NY 392, 396 [1883]; Oakley v Aspinwall, 3 NY 547, 549-550 [1850]; Casterella v Casterella, 65 [*4]AD2d 614, 615 [1978], appeal dismissed 46 NY2d 939 [1979]; People v Naimark, 154 App Div 760, 763-764 [1913]). That said, given the lack of information before us concerning the prior matter, we cannot determine if a violation of Judiciary Law § 17 occurred here. This is in part because neither party, each of whom opted to proceed pro se, nor the AFC alerted Family Court to this possible conflict. Although we recognize that the AFC may not have recalled the prior custody proceeding, from 2014, while the parties were at trial, once the issue was raised by the mother on appeal, it was incumbent upon the AFC to address the alleged conflict in his responsive brief (see generally Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.10 [e], [f]). His failure to do so is disconcerting and leaves the conflict issue unresolved. Furthermore, Family Court was certainly aware of the AFC's former judicial role, and, given the documented involvement of the AFC in the prior matter, the better course would have been to inquire as to any potential conflict. Although the Judiciary Law may not expressly mandate all of the foregoing, what occurred here was far from best practice.
We would find, however, that a conflict arising under Judiciary Law § 17, like its counterpart in the Rules of Professional Conduct (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.12 [a]; Simon's NY Rules of Professional Conduct Annotated § 1.12:4 New York Judiciary Law §§ 17 and 18),[FN3] cannot be waived (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.12 Comment [1]; NY St Bar Assn Comm on Prof Ethics Op 1064 [2015]; cf. Matter of City of Rochester, 208 NY at 192; Oakley v Aspinwall, 3 NY at 549; People v Massey, 191 AD3d 1488, 1489 [2021], lv denied 36 NY3d 1121 [2021]; Lanzuter Benevolent Assn. v Altman, 160 AD3d 575, 576 [2018]; Matter of Leifer v Gross, 140 AD3d 959, 959 [2016]; Casterella v Casterella, 65 AD2d at 615). Therefore, we would remit the matter to Family Court for development of the record on this issue and a determination as to whether the Judiciary Law has been violated (see e.g. Malone v Malone, 122 AD3d 1190, 1194 [2014]; Matter of McKenna v McKenna, 90 AD3d 1110, 1111 [2011]; Confidential Brokerage Servs., Inc. v Confidential Planning Corp., 85 AD3d 1268, 1270 [2011]; Matter of Lee S., 58 AD3d 1088, 1089 [2009]; Matter of Coleman v Coleman, 1 AD3d 833, 835 [2003]; People v Cameron, 194 AD2d 438, 438 [1993]). We accordingly dissent.
In our view, the question to be resolved upon a fully developed record is whether the "matter" over which the AFC presided in his judicial capacity is the same "matter" presently before us within the meaning of Judiciary Law § 17.[FN4] Borrowing again from the Rules of Professional Conduct, "the scope of the term ['matter'] is not defined mechanically but is sensitive to the particular facts and context" at issue (NY St Bar Assn Comm on Prof Ethics Op 1047 [2015]; see e.g. Rules of Professional Conduct [22 NYCRR [*5]1200.0] rules 1.9 Comment [2]; 1.11 Comment [10]), and "a 'matter' may continue in another form" (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.11 Comment [10]; see e.g. Matter of Gordon, 192 AD3d 1206, 1207 [2021]). In determining whether two particular matters are the same for purposes of disqualification, "a variety of factors" may be considered (NY St Bar Assn Comm on Prof Ethics Op 1047 [2015]), including the extent to which the matters "involve the same basic facts" or "the same or related parties" and the "time [that] has elapsed between the matters" (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.11 Comment [10]; see NY St Bar Assn Comm on Prof Ethics Op 904 [2012]). As illustrated by the cases that the majority cites, no one factor is dispositive, and the overall context is what remains paramount (see e.g. NY St Bar Assn Comm on Prof Ethics Op 1047 [2015]; NY St Bar Assn Comm on Prof Ethics Op 1029 [2014]; NY St Bar Assn Comm on Prof Ethics Op 904 [2012]).
Although this record is relatively silent as to what occurred previously, we do know that the AFC presided over at least one custody proceeding involving the mother when he was a Family Court judge in Broome County. That proceeding, like here, involved the mother's custody of her children, albeit not the same children but their half siblings. In both circumstances, the court should have determined the best interests of the children involved, and we simply cannot know the full extent of the AFC's prior knowledge regarding all of those children and the mother. Indeed, Family Court judges are privy to all sorts of information about the families that appear before them irrespective of the "nature" of the petition presently being entertained.[FN5]
Family Court matters are inherently, and intentionally, more holistic, and the application of any factors in evaluating alleged Judiciary Law § 17 violations must take that into account. In rejecting a flexible interpretation of "matter," the majority expresses concern that "the AFC, a former Family Court judge who had presided over countless proceedings in the past, would be disqualified from representing any party in any future case where another party in such case was previously before the AFC in one of those past proceedings." We find this to be a more than acceptable result in the circumstance where a Family Court judge begins appearing as a lawyer in the same court. Too rigid a construction of what constitutes a "matter" within the meaning of Judiciary Law § 17 would, in our view, stifle the statute's purpose in the Family Court context (see Casterella v Casterella, 65 AD2d at 615; see also Matter of City of Rochester, 208 NY at 192; Oakley v Aspinwall, 3 NY at 549; People v Naimark, 154 App Div at 763-764).[FN6] When it comes to disqualification, the concern is "not so much to the motives which in any given case may be supposed to bias the judge" as it is "the apprehensions or even the over-anxious suspicions of litigants [*6]and the preservation of confidence in the administration of justice" (Leonard v Mulry, 93 NY at 396; see Matter of City of Rochester, 208 NY at 192). Thus, although the disqualification rules are "in part directed at protecting innocent litigants, [their] primary purpose is to insure the dignity of the [J]udiciary" (Casterella v Casterella, 65 AD2d at 615; see Murray v Murray, 73 AD2d 1015, 1015 [1980], appeal dismissed 50 NY2d 1059 [1980]). For this reason, judges must avoid even the appearance of impropriety "in order to protect the integrity . . . of the [J]udiciary in the eyes of the community" (Scott v Brooklyn Hosp., 93 AD2d 577, 579 [1983]; see Leonard v Mulry, 93 NY at 396; Murray v Murray, 73 AD2d at 1015). Judiciary Law § 17 makes clear that this concern for the public's perception of the Judiciary does not cease merely because a given judge has left the bench.
When one considers the overarching goal of Judiciary Law § 17, it becomes significant that the AFC decided the prior custody matter adversely to the mother in his former judicial capacity and, here, while duty-bound to advocate for the children's wishes (see Family Ct Act § 241; 22 NYCRR 7.2 [d] [2]), again takes a position adverse to her both at trial and on appeal. Therefore, we would remit this case for development of the record to determine if the AFC should have been disqualified pursuant to Judiciary Law § 17.
Lynch, J., concurs.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Given that an initial custody order was sought in proceeding No. 1, it was unnecessary for any party to establish a change in circumstances (see Matter of Edick v Gagnon, 139 AD3d 1126, 1128 n [2016]).

Footnote 2: We take judicial notice of the 2014 order issued by the AFC when he was a Family Court judge.

Footnote 3: Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.12 (a), addressing "[s]pecific conflicts of interest for former judges, arbitrators, mediators or other third-party neutrals," mandates that "[a] lawyer shall not accept private employment in a matter upon the merits of which the lawyer has acted in a judicial capacity."

Footnote 4: As noted by the majority, Judiciary Law § 17 mandates that a "former judge . . . shall not act as attorney or counsellor in any action, claim, matter, motion or proceeding, which has been before him [or her] in his [or her] official character" (see Rules Governing Judicial Conduct [22 NYCRR] § 100.3 [E] [1] [b] [i]).

Footnote 5: For example, the resolution of Family Court proceedings, on the merits, routinely involves judicial notice of other matters (see e.g. Matter of Sabrina B. v Jeffrey B., 179 AD3d 1339, 1341 [2020]; Matter of Newton v McFarlane, 174 AD3d 67, 77 [2019]; Matter of Lagano v Soule, 86 AD3d 665, 667 n 5 [2011]; Matter of Martin v Martin, 61 AD3d 1297, 1298 n [2009]; Matter of Kryvanis v Kruty, 288 AD2d 771, 772-773 [2001]; Matter of Justin EE., 153 AD2d 772, 774 [1989], lv denied 75 NY2d 704 [1990]). This is an important distinction from criminal actions, several of which are relied upon by the majority. It is axiomatic that, when it comes to proof of guilt, a given criminal matter must be confined to only the offenses charged in the subject accusatory instrument(s) (see generally People v Sandoval, 34 NY2d 371, 376-378 [1974]; People v Molineux, 168 NY 264, 293 [1901]).

Footnote 6: Judiciary Law § 17 is the corollary of Judiciary Law § 14 (see Matter of Gordon, 192 AD3d at 1207), the subject of many of the above-cited cases.