■ In the Matter of JEFFREY SWETT, Respondent, v TERRA BALCOM, Appellant. [884 NYS2d 785]—

McCarthy, J. Appeal from that part of a modified order of the Family Court of Delaware County (Becker, J.), entered June 13, 2008, which partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of visitation.

The parties are the unmarried parents of a daughter (born in May 2003). In August 2007, petitioner (hereinafter the father) sought to modify a May 2004 order which granted respondent (hereinafter the mother) sole custody and two-hour Sunday visitation to him at the mother's residence. The May 2004 order also permitted unsupervised and additional visitation but only at the mother's sole discretion. The subject modification petition, prompted by the mother's persistent refusals to permit expanded visitation, sought joint custody and increased visitation, including overnight visitation. Following a fact-finding hearing at which both parties testified, Family Court denied the father's request for joint custody but granted him additional visitation, including overnight visitation. The mother appeals.

Upon our review of the record, Family Court's decision to modify visitation on the ground that petitioner made a sufficient showing of a change in circumstances has a sound and substantial basis in the record promoting the child's best interest (*see Matter of Fish v Manning*, 300 AD2d 932, 933 [2002]; *compare Matter of Rivera v Tomaino*, 46 AD3d 1249, 1249-1250 [2007]). It appears that the initial restrictions placed on the

father's visitation had nothing to do with any parental misconduct or concerns about his fitness (*compare Matter of De Cicco v De Cicco*, 29 AD3d 1095, 1096-1097 [2006]; *Matter of Fish v Manning*, 300 AD2d at 933). Rather, they stemmed from the child's young age at the time and the fact that the father, prior to then, had no meaningful contact with her. As these concerns were no longer legitimate and because the mother refused to provide him with additional visitation despite reasonable requests, a sufficient change in circumstances warranting modification was demonstrated.[1]

The testimony established that the father is gainfully employed, involved in a stable relationship, lives in a home with a bedroom for the child and enjoys a cordial relationship with the mother and her extended family. Moreover, when the mother was asked about her objections to increased visitation, the mother's only stated concern was that the child might be uncomfortable. Critically, the mother never voiced any concern about the father's ability to parent or the child's safety in his presence. Moreover, again when asked, she raised only two minor concerns about his home, one of which was that it lacked toys. The mother also conceded that the child should have a close relationship with the father and that they played well together during visits.

In our view, nothing in the record—including potential reticence typical of a young child—reveals that expanded visitation would be harmful or detrimental to the child (*see Matter of Rivera v Tomaino*, 46 AD3d at 1250; *Matter of Fish v Manning*, 300 AD2d at 933-934; *compare Matter of Mix v Gray*, 265 AD2d 692 [1999]).[2] "[U]nless visitation is inimical to the [child's] best interests, 'Family Court is required to structure a schedule which results in frequent and regular access by the noncustodial parent' " (*Matter of Daniel v Pylinski*, 61 AD3d 1291, 1292 [2009], quoting *Matter of Maziejka v Fennelly*, 3 AD3d 748, 749 [2004]). Indeed, "a child's best interests will be optimally served

**1.** According to the father, he relied on representations made by the mother over the years that she would permit visitation at his home once the child learned how to talk.

**2.** To this end, we are compelled to point out that the mother was apparently ready and willing to permit overnight visitation with the father after he gave her permission to relocate out-of-state in the fall of 2006 (which she did between December 2006 and March 2007). An agreement between these parties dated October 8, 2006 states that "[t]he father's rights of visitation shall be set forth by additional and different times as to which the parties agree. Both parties will work out a schedule of visitations for holidays; such as Thanksgiving, Christmas, Easter, and mid-school year and summer vacations."

by allowing the development of a healthy relationship with both parents" (*Matter of Rivera v Tomaino*, 46 AD3d at 1250). Thus here, given evidence that the father lived in a suitable home and had a loving relationship with the child, we find that increased visitation was in the child's best interest and further find that the schedule set by Family Court was appropriately structured to also reflect the child's best interest (*see Matter of Daniel v Pylinski*, 61 AD3d at 1292-1293; *cf. Matter of Horike v Freedman*, 37 AD3d 978, 979 [2007]).

Finally, "[a]lthough always highly recommended and strongly encouraged, the appointment of a Law Guardian is a matter within Family Court's discretion" (*Matter of Bush v Stout*, 59 AD3d 871, 873 [2009] [internal quotations marks and citation omitted]). Here, we are unpersuaded that Family Court abused it discretion in failing to sua sponte appoint a Law Guardian for the child. The evidence before the court did not raise any concerns about the fitness of either parent and was sufficient for the court to determine that increased visitation between the child, who certainly knew her father and who was no longer an infant, and the father, who demonstrated himself to be a loving and capable parent, was in the child's best interest (*see id.* at 872-873; *Matter of Ebel v Urlich*, 273 AD2d 530, 532 [2000]; *cf. Matter of Amato v Amato*, 51 AD3d 1123, 1124-1125 [2008]).

Cardona, P.J., Rose, Kane and Garry, JJ., concur. Ordered that the modified order is affirmed, without costs.