■ In the Matter of MICAH NN., Appellant, v KRISTY NN., Respondent. (And Another Related Proceeding.) [913 NYS2d 361]—

Egan Jr., J. Appeal from an order of the Family Court of Broome County (Connerton, J.), entered December 8, 2009, which, among other things, granted petitioner's application, in two proceedings pursuant to Family Ct Act article 6, for custody of the parties' children.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the separated parents of two children, a son born in 2000 and a daughter born in 2003. The mother has two other children from other relationships, a son born in 1996 (hereinafter the male stepchild) and a daughter born in 2008. In 2006, the father moved out of the marital residence, and their two children remained with the mother and her other children.

In March 2009, the father commenced the first of these proceedings seeking custody of their children alleging that the mother left their daughter alone with the male stepchild who, on one occasion, burned her, and on another occasion, sexually abused her. In April 2009, Family Court issued an order that temporarily removed the two children from the mother and placed them in the father's care. Thereafter, in April 2009, the mother was charged with the neglect of all four of her children based on allegations that she left the two children unsupervised in the care of the male stepchild for extended periods of time, and with the knowledge that he has severe behavioral problems and has displayed sexualized behavior towards the daughter, which eventually resulted in allegations of sexual abuse. In June 2009, the mother admitted to the neglect of her four children and was placed under the supervision of the Broome County Department of Social Services. In July 2009, the mother filed a petition seeking custody of the two children, asserting

that the male stepchild no longer lived in the home. After a hearing which extended over several days, Family Court awarded the parties joint custody of the two children with primary physical custody to the father, and the mother was awarded visitation.* The mother now appeals.

"When called upon to make an initial custody decision, a trial court must determine the best interests of the child by reviewing the totality of the circumstances" (*Matter of Defayette v Defayette*, 28 AD3d 820, 821 [2006] [citations omitted]; *see Matter of Yishak v Ashera*, 68 AD3d 1282, 1283 [2009]), considering factors such as "maintaining stability for the children, the children's wishes, the home environment with each parent, each parent's past performance, relative fitness, ability to guide and provide for the children's overall well-being, and the willingness of each parent to foster a relationship with the other parent" (*Matter of Torkildsen v Torkildsen*, 72 AD3d 1405, 1406 [2010] [internal quotation marks and citations omitted]; *see Armstrong v Armstrong*, 72 AD3d 1409, 1412 [2010]; *accord Matter of Holle v Holle*, 55 AD3d 991, 991-992 [2008]).

Initially, we are not persuaded that Family Court erred in failing to consider the children's best interests before granting physical custody to the father. Family Court noted each parties' shortcomings, including the father's brief period of homelessness in 2008 after he lost his job and the mother's admission to the neglect of her children. And, while the male stepchild has been removed from the mother's home, it was in her care that the daughter was burned and thereafter sexually abused by him. Furthermore, the record reflects that the mother failed to seek professional medical attention for the daughter after he poured scalding water on her back. While the mother attempted to explain how she addressed and tended to those injuries, which, according to her, did not seem that severe, the fact remains that the mother did not seek medical treatment for the child. After she was burned, the maternal grandmother came to the mother's home to pick up the child for a visit with the father. The daughter slept at the grandmother's house. The next morning, the grandmother noticed the severity of the daughter's injuries and contacted the father, who immediately came and took the daughter to the emergency room. The father testified that the daughter received second degree burns to her back and still has scarring. While the mother attempts to shift the blame of the daughter's abuse onto the male stepchild, the mother was responsible for the daughter's safety. The record reflects that

---

* A *Lincoln* hearing involving the parties' older child was conducted in May 2009.

while the father has moved multiple times since he and the mother separated, at the time of the trial he was no longer homeless and was residing in a duplex apartment with sufficient room for the children. Furthermore, while the father's employment situation has not always been stable, he is both employed as a shift manager at a fast-food restaurant and is pursuing a degree in accounting.

We also find that Family Court gave more than adequate consideration to petitioner's allegations of domestic violence made for the first time at the hearing on this matter (*see* Domestic Relations Law § 240 [former (1) (a)]; *Matter of Aldrich v Aldrich*, 263 AD2d 579, 580 [1999]). At the hearing, the mother claimed that the father assaulted her before he left the marital residence in 2006. The father denied these allegations. Family Court found that the mother's evidence of domestic violence and of the father smoking marihuana, which included both the mother's testimony and the testimony of the father's former girlfriend, was not "entirely credible." Accordingly, in providing the appropriate deference to Family Court's findings (*see Matter of Claflin v Giamporcaro*, 75 AD3d 778, 780 [2010], *lv denied* 15 NY3d 710 [2010]; *Matter of Torkildsen v Torkildsen*, 72 AD3d at 1406; *Matter of Gast v Gast*, 50 AD3d 1189, 1189 [2008]), we find a sound and substantial basis in the record for its determination to grant primary physical custody of the children to the father.

Turning to the mother's issues regarding Family Court's visitation schedule, "[a]s with custody determinations, the guiding principle in fixing a visitation schedule is the best interests of the child" (*Matter of Maziejka v Fennelly*, 3 AD3d 748, 749 [2004]; *see Matter of Daniel v Pylinski*, 61 AD3d 1291, 1292 [2009]). "Family Court is required to structure a schedule which results in frequent and regular access by the noncustodial parent" (*Matter of Swett v Balcom*, 64 AD3d 934, 935 [2009], *lv denied* 13 NY3d 710 [2009] [internal quotation marks and citations omitted]). As a result of the mother's admission to the neglect of her children, she was placed under the supervision of the Broome County Department of Social Services and ordered to participate in and benefit from a variety of services recommended by the Department. The record reveals that the mother has attended parenting classes and the male stepchild is no longer living in the home. Here, Family Court granted the mother unsupervised overnight visitation every other weekend and on Mother's Day, with both parties to have time with the children on holidays as agreed. We find that this visitation schedule provides the mother with frequent access to the children and, in

according deference to Family Court's determination (*see Matter of Daniel v Pylinski*, 61 AD3d at 1292), we find that the visitation schedule ordered has a sound and substantial basis in the record. Finally, we have considered the mother's remaining argument, that Family Court should have accorded greater weight to the position of the attorney for the children, and find it to be without merit (*see Matter of Nicotera v Nicotera*, 222 AD2d 892, 894 [1995]).

Spain, J.P., Kavanagh, Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.