Matter of Jennifer VV. v Lawrence WW. (2020 NY Slip Op 04619)





Matter of Jennifer VV. v Lawrence WW.


2020 NY Slip Op 04619


Decided on August 20, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 20, 2020

527508

[*1]In the Matter of Jennifer VV., Respondent,
v
Lawrence WW., Appellant.

Calendar Date: February 14, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Colangelo, JJ.


The Arquette Law Firm, PLLC, Clifton Park (Tammy J. Arquette of counsel), for appellant.
Copps DiPaola Silverman, PLLC, Albany (Joseph R. Williams of counsel), for respondent.
Karen R. Crandall, Schenectady, attorney for the children.



Garry, P.J.
Appeal from an order of the Family Court of Saratoga County (Pelagalli, J.), entered March 26, 2018, which partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of two children (born in 2008 and 2012). The parties were divorced in October 2015 pursuant to a settlement agreement that was incorporated but not merged into the judgment of divorce. The agreement provided that the parties would have joint legal and shared physical custody of the children, and established a parenting time schedule by which the children alternated between the parties' homes four or five times each week.
The father continued to reside in the marital residence in the City of Mechanicville, Saratoga County. The mother remarried and, in December 2016, moved from Mechanicville to a new residence located in a different school district, about 15 miles from the father's home. In February 2017, the mother commenced this modification proceeding alleging that a change in circumstances had occurred in that she had left her former employment and intended to stay at home for several years with a child who had recently been born. The mother sought an order reducing the number of midweek transitions in the parenting time schedule and directing that the children would attend school in the district where the mother then resided. While the petition was pending, she added a request for sole decision-making authority with respect to the children's religion. The father opposed the mother's requests.
Following an eight-day fact-finding hearing, Family Court determined that the mother had established a change in circumstances and that the children's best interests warranted a modification of the agreement by which the parties would continue to have joint legal custody, the mother would have primary physical custody and the father would have parenting time from Wednesdays until Saturdays. The court ordered that the children would attend school in the mother's school district and granted her request for decision-making authority over the children's religion, provided that there was no interference with the father's parenting time.[FN1] The father appeals.[FN2]
"A parent seeking to modify an existing custody and parenting time order first must demonstrate that a change in circumstances has occurred since the entry thereof that is sufficient to warrant the court undertaking a best interests analysis in the first instance; assuming this threshold requirement is met, the parent then must show that modification of the underlying order is necessary to ensure the child's continued best interests" (Matter of Kanya J. v Christopher K., 175 AD3d 760, 761 [2019] [internal quotation marks, brackets and citations omitted], lvs denied 34 NY3d 905, 906 [2019]). We reject the father's contention that the parties' settlement agreement required the mother to show that her occupational change had reduced her ability to exercise her parenting time in order to establish a change in circumstances. Instead, Family Court properly interpreted the agreement to find that the mother's decision to become a stay-at-home parent significantly altered her custodial time and thus constituted a change in circumstances within the meaning of the agreement. Further, the mother's move to a new school district and the parties' inability to agree as to where the children would attend school gave additional support to the finding of a change in circumstances (see Matter of Imrie v Lyon, 158 AD3d 1018, 1019 [2018]; Matter of Amy L.M. v Kevin M.M., 31 AD3d 1224, 1225 [2006]).
Turning to the children's best interests, this analysis "involves the consideration of factors such as the past performance and relative fitness of the parents, their willingness to foster a positive relationship between the child[ren] and the other parent, their fidelity to prior court orders and their ability to both provide a stable home environment and further the child[ren]'s overall well-being" (Matter of Carrie ZZ. v Aaron YY., 178 AD3d 1291, 1292 [2019]; see Matter of Turner v Turner, 166 AD3d 1339, 1339 [2018]). The record establishes that both the mother and the father were fit parents who were able to care for the children, provide them with stable homes and foster their well-being. However, they had difficulty communicating with one another about the children's needs and reaching agreement on such matters as the children's extracurricular activities and what schools they should attend. Family Court found that this difficulty stemmed, in part, from the fact that the father was "very rigid and [did] not readily communicate with the [m]other . . . [and] appear[ed] to want any arrangements to be convenient for him." The record supports this conclusion, revealing various incidents in which the father refused to agree to permit the children to participate in activities located more than a certain distance from his home or failed to provide the mother with information that affected the children's well-being. For example, the father did not immediately inform the mother when he made two successive job changes during the fact-finding hearing that significantly altered his availability to care for the children; the court noted its concern that the father did not advise the mother of either change until he testified about them after they took place.
As for the relative stability of the parents' households, Family Court acknowledged that the mother had moved several times after the divorce, while the father had remained in the marital residence. However, the court found that the mother had shown more stability in the recent past than had the father, as she had remarried, purchased a home and become a stay-at-home parent who was available to care for the children on a daily basis, while the father's two recent job changes had reduced his availability. The record further supports the court's conclusion that the mother was more likely to encourage the children's relationship with the father than the father was, and that the mother — a former teacher with a background in education — was better able to provide for their intellectual and emotional development. As for the children's school district, the court acknowledged that the children had previously attended school and preschool in the father's district, but noted that it was an opportune time to make a change, as the older child was transitioning to middle school and the younger child was about to enter kindergarten. Despite the father's disagreement with Family Court's factual findings, this Court defers to such determinations, and "we cannot say that the court's custody determination lacks a sound and substantial basis in the record" (Matter of Dwayne S. v Antonia T., 170 AD3d 1451, 1452 [2019]; see Matter of Michael Q. v Peggy Q., 179 AD3d 1329, 1331-1332 [2020]; Matter of Dennis F. v Laura G., 177 AD3d 1110, 1112 [2019]).[FN3]
As for the modified parenting time schedule, the record supports Family Court's conclusion that the former arrangement had become unworkable. The testimony established that the schedule's frequent weekday transitions had originally been designed around the mother's working hours, but were no longer necessary as the mother had left her former employment. Given the mother's move to a new home about 30 minutes away from the father's residence, the transitions required the children to spend large amounts of time traveling between the two homes, sharply curtailed the mother's weekday time with the children when they were not in school or asleep, and limited her ability to enroll them in extracurricular activities. Moreover, the father's job changes increased his ability to spend time with the children on weekdays while reducing or eliminating his ability to do so on weekends. The schedule devised by Family Court took the father's new working hours into account by placing the children with the mother from Saturday until Wednesday after school, while taking advantage of his increased weekday availability by placing them with him from Wednesday until Saturday morning. We find that the modified arrangement was well within the court's "broad discretion in fashioning a parenting schedule that is in the best interests of the child[ren]" (Matter of Labaff v Dennis, 160 AD3d 1096, 1097 [2018] [internal quotation marks and citations omitted]; see Matter of Williams v Williams, 151 AD3d 1307, 1308-1309 [2017]; Matter of Swett v Balcom, 64 AD3d 934, 935-936 [2009], lv denied 13 NY3d 710 [2009]).
Egan Jr., Mulvey, Aarons and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: As the father raised no challenge upon this appeal to the aspect of Family Court's order concerning the children's religion, we deem any related claims to be abandoned (see generally Matter of Heather NN. v Vinnette OO., 180 AD3d 57, 60 n 2 [2019]).

Footnote 2: When this matter was previously before this Court (182 AD3d 652 [2020]), we determined that the children had not received the effective assistance of appellate counsel in that the attorney originally assigned to represent them had not advocated for their wishes and had not met with them during the appeal. Accordingly, we withheld decision and ordered the appointment of a new attorney for the children, who now appears on their behalf and supports affirmance of Family Court's order.

Footnote 3: Contrary to the father's claim, Family Court did not improperly limit his testimony regarding his finances. As he contends, the respective financial situations of a child's parents are a factor that may be weighed, along with others, in considering the child's best interests (see Matter of Bjorkland v Eastman, 279 AD2d 908, 911 [2001]; Matter of Haran-Buckner v Buckner, 188 AD2d 705, 706 [1992]). However, the court did not foreclose the father from testifying about his financial situation; instead, it permitted him to testify about the parties' existing child support arrangement, financial aspects of his employment changes and his ability to meet his financial obligations. Upon ascertaining that the mother had not petitioned to modify the existing child support arrangement, the court merely precluded the father from giving speculative testimony about the potential financial impact if she did so in the future — a reasonable limitation that did not deprive him of the opportunity to submit relevant financial information.