Matter of Michael U. v Barbara U. (2020 NY Slip Op 07957)





Matter of Michael U. v Barbara U.


2020 NY Slip Op 07957


Decided on December 24, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 24, 2020

529315

[*1]In the Matter of Michael U., Respondent- Appellant,
v
Barbara U., Appellant- Respondent.

Calendar Date: November 17, 2020

Before: Egan Jr., J.P., Pritzker, Reynolds Fitzgerald and Colangelo, JJ.


Lisa K. Miller, McGraw, for appellant-respondent.
Christopher Hammond, Cooperstown, for respondent-appellant.
Donna C. Chin, New York City, attorney for the child.



Egan Jr., J.P.
Cross appeals from an order of the Family Court of Schuyler County (Morris, J.), entered May 15, 2019, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2006). Pursuant to a 2010 custody order, the mother was granted sole legal and physical custody of the child, with supervised visitation granted to the father every Saturday from 2:00 p.m. to 3:00 p.m. to be conducted at a resource center supervised by Catholic Charities. In 2012, Family Court modified the 2010 order by designating the father's sister as the visitation supervisor, rescheduling the father's visitation to every other Saturday from 12:00 p.m. to 3:00 p.m., and permitting him to exercise visitation in public places.
In November 2017, the father commenced this custody/ visitation modification proceeding, seeking to modify the 2012 order by awarding him sole physical custody and shared legal custody of the child or, in the alternative, providing him unsupervised visitation with the child. Following a fact-finding hearing and a Lincoln hearing, Family Court determined that the need for supervised visitation between the father and the child had not been demonstrated, but nevertheless ordered that a third-party adult be present at all times during visitation to facilitate communication between the father and the child based upon the father's demonstrated speech impairment. Both parties appeal.[FN1]
As the party seeking modification of a prior order of visitation, it was the father's burden to establish a change in circumstances since entry of the prior order to then warrant Family Court making a determination as to whether modification thereof would serve the best interests of the child (see Matter of Janeen MM. v Jean-Philippe NN., 183 AD3d 1029, 1030 [2020], lv dismissed 35 NY3d 1079 [2020]; Matter of Beeken v Fredenburg, 145 AD3d 1394, 1395 [2016]; Matter of Merwin v Merwin, 138 AD3d 1193, 1194 [2016]). Family Court did not make an express finding with respect to whether a change in circumstances occurred since entry of the prior order. However, remittal is not necessary given our authority to review the record and make an independent determination in that regard (see Matter of Kevin F. v Betty E., 154 AD3d 1118, 1121 [2017]).
Here, Family Court's prior order designated the father's sister as the sole visitation supervisor for visits between the father and the child. Although the father's sister served in this capacity from 2010 through December 2018, she thereafter elected not to continue in this role. As a result, the father has not exercised his court-ordered supervised visitation since such time.[FN2] Given the withdrawal of the court-designated visitation supervisor, the resulting inability of the father to exercise supervised visitation and in considering [*2]the effect that such a change may have on the nature and quality of visitation between the father and the child given that the father's sister served in this supervisory capacity for approximately eight years, we are satisfied that a change in circumstances occurred since entry of the prior order to warrant Family Court undertaking the requisite best interests analysis (see Scott Q. v Joy R., 151 AD3d 1206, 1207-1208 [2017], lv denied 29 NY3d 919 [2017]; Matter of Dobies v Brefka, 83 AD3d 1148, 1150 [2011]).
"[T]he guiding principle in fixing a visitation schedule is the best interests of the child" (Matter of Maziejka v Fennelly, 3 AD3d 748, 749 [2004]; see Matter of Micah NN. v Kristy NN., 79 AD3d 1188, 1190 [2010], lv denied 16 NY3d 707 [2011]), and it is well settled that "the best interests of a child generally lie with a healthy and meaningful relationship with both parents" (Matter of Jill Q. v James R., 185 AD3d 1106, 1108 [2020] [internal quotation marks, brackets and citations omitted]; see Matter of Heather NN. v Vinnette OO., 180 AD3d 57, 62 [2019]). As relevant here, Family Court has the discretion to impose supervised visitation "if it finds that unsupervised visitation would be detrimental to the child[]'s safety because the parent is either unable or unwilling to discharge his or her parental responsibility properly" (Matter of Williams v Patinka, 144 AD3d 1432, 1433 [2016]). "Although not determinative, the expressed wishes of the child[] are some indication of what is in [his or her] best interests, considering [the child's] age, maturity and potential to be influenced" (Matter of Angela H. v St. Lawrence County Dept. of Social Servs., 180 AD3d 1143, 1146 [2020] [internal quotation marks and citations omitted]). Ultimately, Family Court has broad discretion in determining whether supervised visitation is warranted, and its decision "will only be disturbed by this Court when it lacks a sound and substantial basis in the record" (Matter of Christine TT. v Gary VV., 143 AD3d 1085, 1085 [2016]).[FN3]
The evidence at the fact-finding hearing established that the father was born in 1957 and the mother was born in 1989. The mother and the father first engaged in sexual intercourse when the mother was 13 years old and she later became pregnant with the child when she was 16 years old. Although the father admitted that he "spent eight months in jail" as a result of this relationship, it is not clear from the record what specific conduct he was charged with and/or convicted of and he was evasive in providing answers regarding same.[FN4]
Notably, the child is now approximately the same age that the mother was when she and the father began having sexual relations. However, there is nothing in the record indicating that the father has ever engaged in any mental health counseling or therapeutic programs to gain insight into the inappropriate nature of his prior sexual relationship with the mother. The lack of any such counseling is all the [*3]more troubling given that, in response to questions pertaining to this illicit sexual relationship, the father appeared to try and justify his prior conduct by representing that the mother had been "sold" to him by the child's maternal grandmother.
Although Family Court found that the need for supervised visitation had not been demonstrated, the mother testified that, despite approximately eight years of supervised visitation, she still harbors concerns regarding the child's safety when the child is with the father, the father's ability to provide appropriate supervision and the ability of the father and the child to communicate effectively. The mother testified that she observed the father and the child together during certain supervised visitations and, on a few occasions, the designated supervisor was not present and, at other times, she observed the child engaging solely with the father's sister and not interacting at all with the father. To that end, both the father and the father's sister acknowledged that the child and the father have made little progress in their relationship, and they engage in very little direct communication during visitations, with the father's sister generally serving as an intermediary and relaying the child's communications to the father. Although the father cannot read or write and has a demonstrated speech impediment, there is no indication that the lack of communication between him and the child stems from these indicated deficiencies, as opposed to a general lack of a bond or rapport between them.
The child has been engaged in therapy since she was approximately seven years old, most recently participating in family therapy sessions with the mother and stepfather. Although the father indicated his awareness of the fact that the child was engaged in such therapy, he did not feel that she required it. Further, although he indicated a tacit willingness to participate in therapy or mental health counseling in order to obtain additional visitation, he did not feel that he needed it and, perhaps tellingly, at no point in time has he ever independently pursued mental health treatment or counseling, nor has he chosen to become involved in the child's therapy or family counseling.[FN5]
Having reviewed the totality of the evidence in the record, including the testimony at the Lincoln hearing and the recommendation of the attorney for the child, we find that Family Court's determination that there was no demonstrated need for supervised visitation between the father and the child is not supported by a sound and substantial basis in the record. The father clearly lacks insight not only with respect to the illicit and improper relationship that he had with the mother, but also into the child's mental, emotional and psychological needs, in light of her continuing therapy, the demonstrated lack of communication between them and the continued inability of the father and the child to develop any type of bonded relationship [*4]despite nearly eight years of court-ordered supervised visitation. Accordingly, under the circumstances, we find that continued supervised visitation is not only necessary but should be conducted in a more controlled, therapeutic environment that can afford the father and the child not only safe but more meaningful visitation (see Matter of Ayesha FF. v Evelyn EE., 160 AD3d 1068, 1070-1071 [2018], lv dismissed and denied 31 NY3d 1131 [2018]). However, given the lack of a developed record in this regard, we must remit this matter to Family Court for the appointment of an appropriate supervisor that can facilitate visitation between the father and the child, which includes Family Court's consideration of whether supervised therapeutic visitation would be feasible, appropriate and serve the best interests of the child under the circumstances (see Matter of Jill Q. v James R., 185 AD3d at 1110-1111; Matter of Suzanne QQ. v Ben RR., 161 AD3d 1223, 1226-1227 [2018]; Matter of Ayesha FF. v Evelyn EE., 160 AD3d at 1070-1071; Matter of Paul LL. v Tanya LL., 149 AD3d 1173, 1174-1175 [2017]).[FN6]
Pritzker, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted petitioner unsupervised visitation; matter remitted to the Family Court of Schuyler County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: Family Court did not address in its order the father's request for sole physical and shared legal custody of the child; however, as the father does not raise any issues on appeal with respect to custody, we deem any such challenge to have been abandoned (see Matter of Heather NN. v Vinnette OO., 180 AD3d 57, 60 n 2 [2019]; Matter of Hempstead v Hyde, 144 AD3d 1438, 1439 n [2016]).

Footnote 2: Neither the mother nor the father has agreed on a supervisor to facilitate this visitation.

Footnote 3: Although Family Court also failed to articulate the basis for modifying its prior visitation order, as previously indicated, we have the authority to make an independent determination in this regard given the record before us (see Matter of Christopher T. v Jessica U., 90 AD3d 1092, 1093 [2011]).

Footnote 4:The father also has prior criminal convictions for arson, resisting arrest, harassment in the second degree and criminal possession of a weapon in the fourth degree.

Footnote 5: Although the child's therapist testified that she had never met the father and has never seen him interact with the child, she indicated that, as a parent, he could nevertheless benefit from, among other things, individual therapy, as the creation of such collateral contacts with her agency could provide an appropriate segue into his potential participation in future family counseling sessions with the child.

Footnote 6: The evidence at the fact-finding hearing amply demonstrated that Tara Butineau, a friend of the father, is not to be considered as a viable visitation supervisor.