Matter of Kelly CC. v Zaron BB. (2021 NY Slip Op 01098)





Matter of Kelly CC. v Zaron BB.


2021 NY Slip Op 01098


Decided on February 18, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 18, 2021

529354

[*1]In the Matter of Kelly CC., Appellant,
v
Zaron BB., Respondent. (Proceeding No. 1.) (And Two Other Related Proceedings.)
In the Matter of Zaron BB., Respondent,
v
Kelly CC., Appellant. (Proceeding No. 5.) (And Another Related Proceeding.)

Calendar Date: January 12, 2021

Before: Garry, P.J., Egan Jr., Lynch, Aarons and Pritzker, JJ.


Ellen S. Ross, Johnstown, for appellant.
Casale Law Firm, PLLC, Gloversville (Anthony Casale of counsel), for respondent.
Rachel A. Rappazzo, Schenectady, attorney for the children.



Lynch, J.
Appeal from an order of the Family Court of Schoharie County (Hall, J.H.O.), entered June 3, 2019, which, among other things, granted petitioner's application, in proceeding No. 5 pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Zaron BB. (hereinafter the father) and Kelly CC. (hereinafter the mother) are the parents of two children (born in 2010 and 2014). A July 2017 consent order awarded the parties joint legal and physical custody of the children, with a directive to refrain from using corporal punishment against them. The July 2017 order did not designate a primary physical custodian, but it did set forth a schedule of substantial parenting time for the father during the week.
In May 2018, the mother filed a petition to modify the July 2017 order, requesting sole custody of the children and seeking to impose supervised visitation on the father upon allegations that he had used corporal punishment against the children and had engaged in domestic violence against his then-girlfriend (hereinafter the girlfriend) in their presence.[FN1] The mother filed another modification petition in June 2018 requesting the same relief upon essentially the same allegations. In support of her domestic violence allegation, the mother attached to her June 2018 petition a family offense petition that the girlfriend had filed against the father in May 2018 — which had since been dismissed for failure to prosecute — alleging that he had engaged in domestic violence against her in front of her children and that he was abusive to everyone in the household, including the subject children. The mother thereafter filed a violation petition against the father alleging that he had violated an order of protection issued in favor of the subject children. The father, in turn, filed a violation petition against the mother, alleging that she had refused to relinquish the children to his care on June 26, 2018 for his scheduled parenting time. He also filed a petition to modify the July 2017 custody order, seeking sole legal and physical custody of the children upon allegations that the mother was emotionally unstable and had "ma[d]e false allegations against [him]." Following a combined fact-finding hearing on the respective petitions, Family Court granted the father's modification petition and awarded him sole legal and primary physical custody of the children, with a schedule of parenting time for the mother.[FN2] The mother appeals.
"A parent seeking to modify an existing custody and parenting time order first must demonstrate that a change in circumstances has occurred since the entry thereof . . . to warrant the court undertaking a best interests analysis" (Matter of Sandra R. v Matthew R., 189 AD3d 1995, 1996 [2020] [internal quotation marks and citations omitted]; see Matter of Edwin Z. v Courtney AA., 187 AD3d 1352, 1353 [2020]; Matter of Karen Q. v Christina R., 184 AD3d 987, 989 [2020]). "[A]ssuming this threshold requirement [*2]is met, the parent then must show that modification of the underlying order is necessary to ensure the child[ren]'s continued best interests" (Matter of Kimberly H. v Daniel I., 185 AD3d 1170, 1171 [2020] [internal quotation marks and citations omitted]; see Matter of Janeen MM. v Jean-Philippe NN., 183 AD3d 1029, 1030 [2020], lv dismissed 35 NY3d 1079 [2020]). Factors relevant to that inquiry include "maintaining stability in the children's lives, the quality of respective home environments, the length of time the present custody arrangement has been in place, each parent's past performance, relative fitness and ability to provide for and guide the children's intellectual and emotional development, and the effect the award of custody to one parent would have on the children's relationship with the other parent" (Matter of LaBaff v Dennis, 160 AD3d 1096, 1097 [2018] [internal quotation marks and citations omitted]; see Matter of Jennifer VV. v Lawrence WW., 186 AD3d 946, 948 [2020]). Family Court's credibility assessments and factual findings "will not be disturbed as long as they have a sound and substantial basis in the record" (Matter of Michael Q. v Peggy Q., 179 AD3d 1329, 1331 [2020]; see Matter of Amanda I. v Michael I., 185 AD3d 1252, 1254 [2020]).
Although Family Court made no express change in circumstances finding, we exercise our independent fact-finding authority to make that determination (see Matter of Kristen II. v Benjamin JJ., 169 AD3d 1176, 1177 [2019]; Matter of Sweeney v Daub-Stearns, 166 AD3d 1340, 1341 [2018]). It is abundantly clear from the record that the parties' ability to communicate has deteriorated to such an extent that they are unable to effectively and amicably coparent (see Matter of Cooper v Williams, 161 AD3d 1235, 1237 [2018]; Matter of Claflin v Giamporcaro, 75 AD3d 778, 779-780 [2010], lv denied 15 NY3d 710 [2010]). Indeed, each parent had resorted to surreptitiously recording the other during visitation exchanges and both confirmed that it was "impossible" to communicate. Accordingly, the joint custodial arrangement was no longer workable and a best interests analysis was warranted (see Matter of Ryan XX. v Sarah YY., 175 AD3d 1623, 1624 [2019]; Matter of LaBaff v Dennis, 160 AD3d at 1097).
Turning to that analysis, we are mindful that the mother made serious allegations against the father. However, she failed to substantiate those allegations with sufficient proof. As to her claim that the father had used corporal punishment against the children, the mother entered into evidence a series of photographs she had taken depicting various bruises on the children's bodies and a cut on the son's lip. The vast majority of these photographs are undated and some of them were attached to emails that the mother had sent to representatives at Child Protective Services in October and November 2017 — an entire six months before the filing of her May 2018 modification petition. A few of the photographs contain [*3]handwritten notations stating that they were taken on June 22, 2018 and June 23, 2018 — after the father's parenting time — and appear to depict minor bruises on the son's hands. The father unequivocally denied using corporal punishment against the children or having caused these bruises, opining that they likely occurred from innocuous behavior such as the children falling outside. The mother acknowledged that her reports to the Central Register of Child Abuse and Maltreatment about the father's allegedly abusive conduct were all determined to be unfounded (see Matter of Martyna B. v Marlo M., 185 AD3d 497, 497 [2020]; Mohen v Mohen, 53 AD3d 471, 473-474 [2008], lv denied 11 NY3d 710 [2008]). In these circumstances, Family Court could reasonably credit the father's testimony on this issue, and its determination to do so is entitled to deference (see generally Matter of Michael Q. v Peggy Q., 179 AD3d at 1331).
As to the mother's allegation that the children had been exposed to domestic violence while in the father's care, the family offense petition filed by the girlfriend — who was no longer in a relationship with the father at the time of the fact-finding hearing — was dismissed for failure to prosecute and the temporary order of protection issued in connection therewith was vacated. The mother did not call the girlfriend to testify or indicate any attempt to secure her appearance, and the father confirmed that none of the orders of protection that had been issued against him were currently pending. The mother's hearing testimony on this issue was cursory and otherwise unsupported by independent evidence. Although Family Court is required to "consider the effect of domestic violence" when conducting its best interests analysis, it is obligated to do so only when such allegations "are proven by a preponderance of the evidence" (Matter of Aimee T. v Ryan U., 173 AD3d 1377, 1379 [2019] [internal quotation marks and citations omitted]; see Domestic Relations Law § 240 [1] [a]). On this record, we cannot conclude that Family Court erred in finding that the mother failed to prove her allegation of exposure to domestic violence by a preponderance of the evidence.
With respect to the issue of legal custody, the testimony adduced at the fact-finding hearing demonstrated that both parties were actively involved in the children's lives, including with respect to their education and medical care. The mother, however, has displayed poor judgment on certain occasions, including by allowing two acquaintances to move into her residence for a five-month period, whom she eventually had to forcibly evict due to addiction issues. The father also entered into evidence a series of audio recordings that he had made of the parties' exchanges, on which the mother can be heard screaming and cursing at the father in front of the children. While the father conceded that he made some of these recordings without the mother's knowledge, he explained that he felt [*4]compelled to do so because he was concerned about her behavior. The father maintained that he had spoken with the mother about the need to refrain from engaging in inappropriate conversations with him in front of the children, but she failed to stop this behavior. Although the mother alleged that the father had also displayed poor judgment — entering into evidence a Facebook picture that depicted the father driving a car with sparks emitting from one of the tires — the father explained that he had gotten a flat tire and that the children were not in the car at that time. Moreover, although the father was initially resistant to obtaining an individualized education plan (hereinafter IEP) for the daughter — who has attention deficit hyperactivity disorder — the mother acknowledged that the father had participated in a number of IEP meetings on behalf of the daughter and had never taken steps to terminate her services. There was also testimony that the mother had withheld the children from the father on multiple occasions and had failed to inform him of certain medical and therapy appointments. The father, by contrast, assured Family Court that, if he were awarded sole custody, he would encourage a relationship between the mother and the children and inform her about all of the children's appointments. The foregoing evidence provides a sound and substantial basis to support Family Court's decision to award the father sole legal custody (see Matter of John VV. v Hope WW., 163 AD3d 1088, 1091 [2018]; Matter of Rutland v O'Brien, 143 AD3d 1060, 1063 [2016]; Matter of David J. v Leeann K., 140 AD3d 1209, 1211 [2016]).
As to the issue of physical custody, both parties were gainfully employed at the time of the fact-finding hearing. However, the father's work schedule permitted more availability for the children on school days, as he worked from Saturday through Monday and had the remainder of the week off. The mother, by contrast, worked from Wednesday afternoon through Saturday. Moreover, the mother's safety concerns about the father's residence — including that he lives within close proximity to a highway and has a pond on his property — were unsubstantiated. The mother acknowledged that she had resided with the children at the father's home on a full-time basis before entry of the July 2017 order and introduced no evidence that there had been any incidents with respect to his residence during his parenting time. The mother's testimony that she had witnessed the father fail to supervise the children on his property after July 2017 was both unsubstantiated and called into question by her concession that she had not been on the property since the year prior. The father unequivocally testified that, if he were awarded primary physical custody, he would continue to ensure that the daughter has the necessary IEP help that she requires at school and would inform the mother about all of the children's school activities, functions and meetings. Finally[*5], while certainly not dispositive, we note that the attorney for the children supports the custody arrangement as modified by Family Court, which did not substantially alter the parties' parenting time arrangement as set forth in the prior order. Upon our review of the record, and according appropriate deference to Family Court's credibility determinations, we conclude that there is a sound and substantial basis in the record to support the modified custodial arrangement as fashioned by Family Court (see Matter of John VV. v Hope WW., 163 AD3d at 1091; Matter of Charles I. v Khadejah I., 149 AD3d 1422, 1424 [2017]; Matter of Andrew S. v Robin T., 145 AD3d 1209, 1212 [2016]).[FN3]
We further reject the mother's contention that Family Court violated Domestic Relations Law § 240 (1) (a) in granting the father's modification petition. Domestic Relations Law § 240 (1) (a) provides, in pertinent part, that a parent who makes a "good faith allegation based on a reasonable belief supported by facts that the child is the victim of . . . the effects of domestic violence, and . . . acts lawfully and in good faith in response to that reasonable belief to protect the child[,] . . . shall not be deprived of . . . or restricted in custody, visitation or contact, based solely on that belief or the reasonable actions taken based on that belief." Here, Family Court's decision to modify the July 2017 custody order was not "based solely" on the mother's allegations that the children had been exposed to domestic violence in the father's care. Rather, the court considered the totality of the circumstances, including, among other things, the parties' past performance and relative fitness. Although we agree with the mother that the court should not have drawn a negative inference against her for failing to call the girlfriend to testify in the absence of any evidence that the girlfriend was in the mother's control, the impact of the inference was harmless insofar as there was "otherwise sufficient evidence adduced at the hearing to support the [custodial] modification imposed by Family Court" (Matter of LaRussa v Williams, 114 AD3d 1052, 1054 [2018]).
We do, however, think a modification of the order is necessary as it relates to decision-making authority over the children's medical care and education. The mother had made sound decisions for the children with respect to these issues, as she was the party who obtained IEP services on the daughter's behalf. Notably, Family Court stated in its bench decision that the mother would have the "opportunity . . . to participate in the decision-making regarding [the daughter's] education," yet included no such provision in its written order. We see no reason why the mother should not have a right to participate in decision-making with respect to the children's medical care and education, as well as unfettered access to their medical and educational records (see Matter of Maerz v Maerz, 165 AD3d 1404, 1407 [2018], lv denied [*6]32 NY3d 914 [2019]; Matter of Deyo v Bagnato, 107 AD3d 1317, 1320 [2013], lv denied 22 NY3d 851 [2013]). Accordingly, the order is modified as follows: the father is affirmatively obligated to consult and discuss issues related to the children's education and medical care with the mother and, in good faith, consider her position prior to rendering a final decision on these matters. The mother shall have the right to attend all medical appointments and educational meetings and events on behalf of the children. The father is also directed to provide the mother with full access to the children's school and medical records and to keep her promptly informed about all significant matters concerning the children's health, education and extracurricular activities.
Garry, P.J., Egan Jr., Aarons and Pritzker, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by (1) directing that Zaron BB. shall consult and discuss with Kelly CC. issues relating to the children's education and medical care and, in good faith, consider her position prior to exercising his final decision-making authority on these matters, (2) directing that Kelly CC. shall have the right to attend all medical appointments and educational meetings and events on behalf of the children, and (3) directing that Zaron BB. shall provide Kelly CC. with full access to the children's educational and medical records and keep her informed about all significant matters concerning the children's health, education and extracurricular activities, and, as so modified, affirmed.



Footnotes

Footnote 1: Although not contained in the record, the parties reference a March 12, 2018 Family Court order that apparently modified the July 2017 order in certain respects. However, the parties stipulated that any change in circumstances finding would relate back to the July 2017 order.

Footnote 2: In its bench decision, Family Court dismissed the mother's petitions due to "an absence of credible proof." The court also dismissed the father's violation petition, finding that, although the mother was in willful violation of the July 2017 order insofar as she had withheld the children from the father on June 26, 2018, the consequences of its decision on the father's modification petition "[were] so great that any further consequence for [the mother] would not be appropriate."

Footnote 3: One factual determination made by Family Court does, however, lack a sound and substantial basis in the record. In its bench decision, Family Court determined that there was "undisputed testimony" that the daughter's melatonin — a sleep aid she uses in conjunction with her attention deficit hyperactivity disorder diagnosis — "was never provided by [the mother] to the [father]." The record does not support that finding, as the mother repeatedly attempted to testify that the father refused to pick up that medication from the mother's house despite her request for him to do so — testimony that was erroneously stricken by Family Court on objection. The melatonin issue did not come up during either the direct or cross-examination of the father. In our view, Family Court's determination to impute blame to the mother for ostensibly withholding the melatonin lacks record support. Despite this error, we conclude that the totality of the circumstances supports the modified custody arrangement fashioned by Family Court.