Matter of Ann T. v James U. (2025 NY Slip Op 05024)

Matter of Ann T. v James U.

2025 NY Slip Op 05024

Decided on September 18, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 18, 2025

CV-24-1373
[*1]In the Matter of Ann T., Appellant,
v
James U., Respondent. (And Four Other Related Proceedings.)

Calendar Date:August 14, 2025

Before:Lynch, J.P., Ceresia, Fisher, Powers and Mackey, JJ.

Cynthia Feathers, Saratoga Springs, for appellant.
Assaf & Siegal PLLC, Albany (David M. Siegal of counsel), for respondent.
Vicki J. Prager, Northville, attorney for the children.

Mackey, J.
Appeal from an order of the Family Court of Montgomery County (Michael Dayian, J.), entered July 11, 2024, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the three subject children (born in 2007, 2009 and 2011).[FN1] The mother and the father divorced in 2019 and, pursuant to a 2021 order, the parties shared joint legal custody, with primary physical custody awarded to the father and supervised contact with the mother. Around August 2022, and following the mother's relocation from Onondaga County to Wayne County the prior year, the father informed the mother that he was moving with the children from Onondaga County to Montgomery County and changing their school district.[FN2]
In April 2023, upon the mother's six-month incarceration for an alcohol-related offense, the 2021 order was partially modified by suspending the mother's in-person contact with the children.[FN3] Around the time of the mother's subsequent release from jail, the parties each filed separate custody modification and violation petitions. In this regard, the mother sought to eliminate that part of the prior order requiring supervised visitation and for the father to return the children to Onondaga County for visitation. The father, in turn, alleged that the mother's increasingly erratic behavior resulted in her violation of the prior order by, among other things, failing to keep scheduled visitations, making false allegations against him and his wife and sending several inappropriate messages to an array of individuals and school officials. Upon these grounds, the father sought sole legal custody of the children, with supervised visitation to the mother upon consideration of the children's wishes. Following a fact-finding hearing and a Lincoln hearing, Family Court found, among other things, that a change in circumstances had occurred and that it was in the best interests of the children to grant sole legal custody and primary physical custody to the father, with regularly scheduled supervised visitation with the mother in a public setting.[FN4] The mother appeals.
The mother does not dispute that the requisite change in circumstances has occurred since the prior order (see Matter of Chad KK. v Jennifer LL., 219 AD3d 1581, 1582 [3d Dept 2023]; Matter of Anthony JJ. v Angelin JJ., 211 AD3d 1394, 1395 [3d Dept 2022]), nor does she challenge Family Court's award of sole legal custody to the father. Instead, she argues that certain aspects of the court's order were against the best interests of the children; namely, that she should have been awarded therapeutic and/or unsupervised visitation, including within her home, that responsibility for transportation for visitation should have been shared, and that participation in visitation should not be made upon consideration of the children's [*2]wishes.
The determination of an appropriate parenting time schedule is guided by the best interests of the children, which "generally lie with a healthy, meaningful relationship with both parents" (Matter of Michael U. v Barbara U., 189 AD3d 1909, 1910 [3d Dept 2020] [internal quotation marks, brackets and citations omitted]). Nevertheless, "Family Court has the discretion to impose supervised visitation if it finds that unsupervised visitation would be detrimental to the child[ren]'s safety because the parent is either unable or unwilling to discharge his or her parental responsibility properly" (id. at 1911 [internal quotation marks and citations omitted]; see Matter of Timothy D. v Becki C., 195 AD3d 1081, 1082 [3d Dept 2021]). "Although not determinative, the expressed wishes of the children are some indication of what is in their best interests, considering their age, maturity and potential to be influenced" (Matter of Angela H. v St. Lawrence County Dept. of Social Servs., 180 AD3d 1143, 1146 [3d Dept 2020] [internal quotation marks and citations omitted]; accord Matter of Timothy D. v Becki C., 195 AD3d at 1082). "Ultimately, Family Court has broad discretion in determining whether supervised visitation is warranted, and its decision will only be disturbed by this Court when it lacks a sound and substantial basis in the record" (Matter of Michael U. v Barbara U., 189 AD3d at 1911 [internal quotation marks and citation omitted]; see Matter of Angela H. v St. Lawrence County Dept. of Social Servs., 180 AD3d at 1146).
The hearing testimony and related exhibits established that, since the prior order, the mother engaged in a pervasive pattern of erratic, combative and inappropriate behavior toward the father, his wife, the children and others, including the sending of several vulgar emails to the children's school officials. The mother openly acknowledged that her behavior was precipitated by a later-diagnosed mental health condition, and that her relationships with the children had already been strained as a result of her history of alcohol abuse. In addressing her progress in this regard, the mother testified at the hearing that her mental health at that time was "as good as it can be" and submitted documentation that her alcoholism was in remission. We note, however, that she failed to provide any monthly treatment summaries as was required under the prior order and that she spent six months of the relevant time period incarcerated for an alcohol-related offense. As to her interactions with the children, the mother admitted that she only once attempted to contact them during her incarceration. The mother's testimony further indicated her limited knowledge of the children's respective interests or extracurricular activities. She explained that her difficulty in attending the children's events during the week was due, in part, to distance and her lack of a driver's license. The father testified that he supports the children having a relationship [*3]with the mother but conceded that, occasionally, the two older children would choose not to go to visitation. As such, he supported supervised visitation, but argued that the children's wishes should be taken into consideration. The attorney for the children similarly advocated for, at most, supervised visitation in a public setting close to the children's home as the teenage children remained largely reticent about spending time with the mother, were not interested or were reluctant to engage in therapeutic visitation, and wanted to continue participating in several extracurricular activities. Upon this record, and in view of the children's ages, maturity and expressed desires concerning visitation, we are satisfied that Family Court properly exercised its discretion in awarding the mother supervised visitation in a public setting near the children's home (see Matter of Michael NN. v Robert OO., 210 AD3d 1326, 1326-1327 [3d Dept 2022], lv denied 39 NY3d 910 [2023]; Matter of Michael U. v Barbara U., 189 AD3d at 1910-1911).
Contrary to the mother's contentions, Family Court acknowledged her transportation difficulties — some of which were of her own creation — by requiring that the father transport the children to and from visitation. We are cognizant that the parents' respective relocations, together with the requirement that visitation occur near the children's home, result in the mother incurring additional travel time. Nevertheless, the court properly considered the needs of the children by requiring that visitation occur in their home county to reduce their time traveling and to facilitate their continued participation in meaningful school and extracurricular activities (see Matter of Maranda WW. v Michael XX., 219 AD3d 1590, 1593 [3d Dept 2023]).
We are likewise unpersuaded by the mother's contention that Family Court impermissibly delegated its authority over visitation to the children (see Matter of Michael B. v Patricia S., 233 AD3d 403, 404-405 [1st Dept 2024]; Matter of Kerry D. v Deena D., 230 AD3d 492, 495 [2d Dept 2024]). The court expressly provided for the mother's regularly scheduled, supervised visitation. Although the court instructed that the children's wishes were to be taken "into consideration" when "arranging for the visits," the mother's visits were not to be "unreasonably denied" and accommodations were to be made in the event of certain scheduling conflicts.
We similarly find no merit to the mother's claim that she did not receive meaningful representation. In order "to successfully maintain an ineffective assistance of counsel claim, a party must demonstrate that he or she was deprived of meaningful representation as a result of his or her lawyer's deficiencies" (Matter of Carly W. v Mark V., 225 AD3d 984, 987 [3d Dept 2024] [internal quotation marks and citations omitted]). To this end, "[c]ounsel's representation need not be perfect and, as it is not the role of this Court to second-guess counsel's trial strategy or [*4]tactics, a party seeking to prevail on an ineffective assistance of counsel claim must do something more than engage in hindsight speculation as to the viability of counsel's strategy" (Matter of Kyle I. v Kandice K., 232 AD3d 1074, 1077 [3d Dept 2024] [internal quotation marks and citations omitted]). "[S]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, a parent's constitutional right to the effective assistance of counsel will have been met" (Matter of Dianne SS. v Jamie TT., 235 AD3d 1138, 1143 [3d Dept 2025] [internal quotation marks, brackets and citations omitted]).
The record here reflects that, despite the mother being represented by new counsel shortly before the hearing was to commence, her attorney actively engaged in the hearing and was familiar with the matter, made appropriate objections and examination of witnesses, and zealously represented the mother (see Matter of Traci A. v Maxmillion B., 232 AD3d 1070, 1073 [3d Dept 2024]). The attorney's decision to forego a posttrial written summation "is not necessarily indicative of ineffective legal representation" (Matter Bennett v Abbey, 141 AD3d 882, 884 [3d Dept 2016] [internal quotation marks and citation omitted]; see Matter of Carly W. v Mark V., 225 AD3d at 987). As to the attorney's failure to submit certain unspecified mental health records, a letter related to the mother's treatment for alcoholism was earlier submitted and read into the record, indicating that her "[d]iagnosis of alcohol dependence remain[ed] in remission" and that, following a substance abuse evaluation, she was not recommended for treatment. Given the mother's failure to provide regular treatment summaries as required under the prior order and her ambivalent testimony concerning her mental health status at the time of the hearing, her attorney's decision to not submit recent health records related to the mother's bipolar diagnosis may well have been strategic (see Matter of Dianne SS. v Jamie TT., 235 AD3d at 1143; Matter of Kyle I. v Kandice K., 232 AD3d at 1077). In view of the foregoing, "though the representation may not have been flawless, we cannot say it was not reasonably competent so as to deprive [the mother] of meaningful representation" (Matter of Carly W. v Mark V., 225 AD3d at 988 [internal quotation marks and citation omitted]; see Matter Bennett v Abbey, 141 AD3d at 884-885). The mother's remaining contentions have been considered and found unavailing.
Lynch, J.P., Ceresia, Fisher and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The oldest child (born in July 2007) turned 18 during the pendency of this appeal and, thus, any issues pertaining to visitation with respect to this child have been rendered moot (see Matter of Michelle EE. v John EE., 235 AD3d 1121, 1121 n 1 [3d Dept 2025]).

Footnote 2: The 2021 order further provided that the children's school district could not be changed without the parents discussing same, but that the father retained the right to make a final determination.

Footnote 3: The mother retained permission to contact the children through written correspondence, and she was permitted to petition to restore her in-person visitation upon her release from incarceration without the need to show a change in circumstances.

Footnote 4: Family Court dismissed the parties' respective violation petitions and the mother, in her brief on appeal, expressly focuses her arguments on issues pertaining to the modification petitions.