Matter of Kelly SS. v Justin TT. (2025 NY Slip Op 06771)

Matter of Kelly SS. v Justin TT.

2025 NY Slip Op 06771

Decided on December 4, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 4, 2025

CV-24-1512
[*1]In the Matter of Kelly SS., Respondent,
v
Justin TT., Appellant.

Calendar Date:October 17, 2025

Before:Clark, J.P., Pritzker, Lynch, Powers and Mackey, JJ.

Lisa A. Burgess, Indian Lake, for appellant.
Barbara Ann Montena, Ballston Spa, for respondent.
Elena Jaffe Tastensen, Saratoga Springs, attorney for the child.

Pritzker, J.
Appeal from an order of the Family Court of Saratoga County (Michael Hartnett, J.), entered September 4, 2024, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the subject child (born in 2010). Pursuant to a 2018 consent order, the mother and the father were granted joint legal custody, with the mother having primary physical custody and the father having parenting time on alternating weekends. Since the issuance of that order the mother has been the primary caregiver and custodian of the child; the child resides with the mother and the mother's husband. In February 2024, the mother filed a petition to modify the 2018 order, seeking sole custody and to prohibit the father from having contact with the child. Following a fact-finding hearing and a Lincoln hearing, Family Court found the requisite change in circumstances and determined that it was in the best interests of the child for the mother to have sole legal and physical custody and for the father to have supervised visitation with the child in a specific therapeutic setting to rebuild the relationship.[FN1] The father appeals.
Given that the father does not dispute that the mother established a change in circumstances, we turn our inquiry directly to his contention that Family Court erred in limiting his contact with the child to supervised therapeutic visitation. We disagree. In determining the child's best interests, courts must assess which custody arrangement will "best promote the child[ ]'s welfare and happiness" (Matter of Adam E. v Heather F., 151 AD3d 1212, 1213 [3d Dept 2017] [internal quotation marks, brackets and citations omitted]). As relevant here, "[a]n order of supervised parenting time will be warranted where the court finds that unsupervised parenting time would be detrimental to the
child[ ]'s safety because the parent is either unable or unwilling to discharge his or her parental responsibility properly" (Matter of Lynn X. v Donald X., 162 AD3d 1276, 1277 [3d Dept 2018] [internal quotation marks, brackets and citations omitted]). "[A]lthough not determinative, the expressed wishes of the child are some indication of what is in his or her best interests, considering his or her age, maturity and potential to be influenced" (Matter of Chad KK. v Jennifer LL., 219 AD3d 1581, 1584 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]). "The propriety of visitation is a matter committed to the sound discretion of Family Court, guided by the best interests of the child, and this Court will not disturb its determination if it is supported by a sound and substantial basis in the record" (Matter of Robert D. v Sarah E., 238 AD3d 1222, 1223 [3d Dept 2025] [internal quotation marks and citations omitted]).
The testimony at fact-finding revealed that the father had not contacted the mother or [*2]the child in approximately four years, since October 2020, and that the child lives full time with the mother, her husband and their daughter. At the time of fact-finding, the father was incarcerated for criminal sale of a controlled substance, with a January 2025 release date. The mother testified that she has given the father complete access to the child whenever he chooses by having provided the child a cell phone, with the same phone number, since the child was eight years old. The father testified that he currently did not know the child's phone number, or he would have tried to contact the child, but admitted that at one point he did have the child's phone number but that any time he called it went to her voicemail. The parties both testified that the father's last contact with the child was in October 2020 when they met at a Stewart's Shop, but the visit ended with the child very upset and crying. Since that occasion, the father has not made any contact with her by phone, text, email, letter or postcard nor has he sent the child any gifts, cards or letters.[FN2] Although the father testified that he had attended a doctor's appointment for the child, he did not know the date or the name of the doctor. He also admitted that, while he knows where the child attends school, he has never gone to a parent/teacher conference or any school events. The father also testified that, since October 2020, he has not had any conversations with the mother about the child's medical issues or educational issues because he has received no response.
Based on the foregoing, and according deference to Family Court's determination of witness credibility and findings of fact (see Matter of John EE. v Jalyssa GG., 222 AD3d 1219, 1222 [3d Dept 2023]), Family Court properly found that it is in the best interests of the child for the father to have supervised therapeutic visitation as the record demonstrates that the father and the child have not had any contact for a period of time, and their last visit went poorly. Additionally, he also did not have any contact with the mother, doctors or the child's school in an attempt to check in on how the child was doing and, at the time of the hearing, was incarcerated for selling drugs. This supports the court's determination that the mother is more appropriately situated to provide for the child's overall well-being (see Matter of Chad KK. v Jennifer LL., 219 AD3d at 1584-1585). Moreover, in addition to finding that the father was not entirely credible, the court found he is either unwilling or unable to accept that his actions have deeply impaired the relationship with the child and the record conclusively demonstrates their fractured relationship is because of his actions (see Matter of Christopher WW. v Avonna XX., 202 AD3d 1425, 1427 [3d Dept 2022]; Matter of Michael U. v Barbara U., 189 AD3d 1909, 1912-1913 [3d Dept 2020]). Accordingly, considering the testimony as a whole, as well as the Lincoln hearing, we find that Family [*3]Court's determination to order supervised therapeutic parenting time is supported by a sound and substantial basis in the record (see Matter of Michelle B. v Angelo C., 189 AD3d 1907, 1909 [3d Dept 2020]).
Contrary to the father's contention, Family Court did not improperly delegate its authority to determine the father's visitation to the mother. Significantly, the court's order does not provide the mother with unilateral decision-making regarding a visitation schedule; rather, it states the father "shall be entitled to exercise supervised parenting time with the child at times as may be agreed upon between the parties" and that agreement and consent shall not be unreasonably withheld by either the mother or the father (compare Matter of Cecelia BB. v Frank CC., 200 AD3d 1411, 1416 [3d Dept 2021]). Contrary to the father's contention, there is no support in the record that this arrangement is untenable on the basis that the mother will unreasonably withhold her consent (see Matter of Sarah I. v Ian J., 233 AD3d 1334, 1337 [3d Dept 2024], lv denied 43 NY3d 904 [2025]). Additionally, Family Court set out specific guidelines as to the parties' responsibilities for supervised visitations, placing the burden on the father to schedule therapeutic visitation and to provide the mother with the name, location and time of the visitation at least 96 hours in advance (see Matter of Henry CC. v Antoinette DD., 222 AD3d 1231, 1234 [3d Dept 2023]). Indeed, placing the responsibility for these logistics in the hands of the father will afford him the opportunity to largely control when and if he and the child begin working on their relationship (see generally id.).
Clark, J.P., Lynch, Powers and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Although incarcerated at the time of fact-finding, the father testified that he would be released from incarceration in January 2025.

Footnote 2: The father cited not having the child's address as the reason he had not sent anything.